Peter B. Schneider
**SCHNEIDER WALLACE COTTRELL**
**KONECKY WOTKYNS LLP**
3700 Buffalo Speedway, Suite 1100
Houston, Texas 77098
Telephone: (713) 338-2560
Facsimile: (866) 505-8036
pschneider@schneiderwallace.com
*Attorney for Plaintiffs*
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SALVADORA ORTIZ and THOMAS SCOTT, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br><br>AMERICAN AIRLINES INC., THE AMERICAN AIRLINES PENSION ASSET ADMINISTRATION COMMITTEE,  and AMERICAN AIRLINES FEDERAL CREDIT UNION<br><br>          Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT (ERISA)** |

## PRELIMINARY STATEMENT

1.      Plaintiffs Salvadora Ortiz and Thomas Scott ("Plaintiffs"), individually and as representatives of a class of participants and beneficiaries of the American Airlines retirement plan formally known as the $uper $aver, a 401(k) Capital Accumulation Plan for Employees of Participating AMR Corporation Subsidiaries ("$uper $aver Plan" or "the Plan"), bring this action under Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), on behalf of the Plan against Defendants American Airlines Inc., the American Airlines Pension Asset Administration

Committee ("PAAC"), and American Airlines Federal Credit Union ("Defendants") for breaches of fiduciary duties owed to Plaintiffs and the proposed Class.

## JURISDICTION

2.     Plaintiffs bring this action pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), (3). This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

## VENUE

3.     Venue lies in the Northern District of Texas pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Defendant resides or may be found in this District and/or the breaches alleged took place in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff claims occurred within this District.

## THE PARTIES AND THE PLANS

4.     At all relevant times, Plaintiff Salvadora Ortiz has been a participant in the Plan, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), and has owned an interest in the American Airlines Credit Union Demand Deposit Fund (the "AA Credit Union Fund") through the Plan.

5.     At all relevant times, Plaintiff Thomas Scott has been a participant in the Plan, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), and has owned, directly or indirectly, an interest in the AA Credit Union Fund through the Plan.

6.     At all relevant times, the Plan was an employee pension benefit plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). It was an individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

7.     At all relevant times, Defendant American Airlines Inc. ("American") was sponsor and administrator of the Plan, and thus a fiduciary under ERISA to Plaintiffs and the proposed Class. American is headquartered in Fort Worth, Texas.

8.      At all relevant times, Defendant PAAC was responsible for the selection and appointment of trustees and investment managers and thus a fiduciary under ERISA to Plaintiffs and the proposed Class.

9.      At all relevant times, Defendant American Airlines Federal Credit Union ("AA Credit Union") was a federally chartered credit union that held assets of the Plan in demand deposit accounts pursuant to the terms of ERISA § 408(b)(4), which permits plan assets to be invested in deposits that bear a reasonable interest rate in a bank or similar financial institution supervised by the United States or a State if such institution is a fiduciary of such plan.   Thus, the AA Credit Union is a fiduciary under ERISA to Plaintiffs and the proposed Class.

## FACTS

### The $uper $aver Plan

10.      The $uper $aver Plan is an eligible individual account plan, meaning that the Plan provides an individual account for each participant the benefits of which are based solely on the amount contributed to a participant's account adjusted for any income, gains, losses and expenses. ERISA § 3(34), 29 U.S.C. § 1002(34).

11.      The $uper $aver Plan, according to the Summary Plan Description, "is intended to comply with ERISA Section 404(c) and regulations thereunder" (a "404(c) Plan"). ERISA § 404(c) provides that if an individual account plan permits a participant or beneficiary to exercise control over the assets in his or her account and if the participant or beneficiary exercises control over the assets in his account, then no person who is otherwise a fiduciary shall be liable for any loss which results from such participant's or beneficiary's exercise of control.[1] A 404(c) Plan must provide "an opportunity for a participant or beneficiary to exercise control over the assets in his individual account." Among other conditions required for a plan to be deemed to provide participants with control over the investment of their accounts, a 404(c) plan must offer at least three investment choices that constitute a broad range of investment alternatives, one of which must be "an income

_____
[1] 29 U.S.C. § 1104(c)(1)(B) (2000).

producing, low risk, liquid fund."[2]

12.     While ERISA § 404(c) may relieve a plan fiduciary from liability for the choices made by a participant with respect to the investment of the participant's account, the U.S. Department of Labor ("DOL") has made it clear that the selection of the investment choices made available under the plan is a fiduciary function for which ERISA § 404(c) does not provide protection from liability:

> The Department [of Labor] emphasizes, however, that the act of designating investment alternatives (including look-through investment vehicles and investment managers) in an ERISA 404(c) plan is a fiduciary function to which the limitation on liability provided by section 404(c) is not applicable. All of the fiduciary provisions of ERISA remain applicable, to both the initial designation of investment alternatives and investment managers and the ongoing determination that such alternatives and managers remain suitable and prudent investment alternatives for the plan. Therefore, the particular plan fiduciaries responsible for performing these functions must do so in accordance with ERISA.[3]

**Defendant's Imprudent Use of a Credit Union Demand Deposit Fund in the Plan**

13.     Stable value funds are a common investment in large defined contribution plans like the Plan—and they in fact are designed specifically for use in such plans. Stable value funds are conservatively managed to preserve principal and provide a stable credit rate of interest. And "[b]ecause they hold longer-duration instruments, [stable value funds] generally outperform money market funds, which invest exclusively in short-term securities." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 806 (7th Cir. 2013); *see also* Paul J. Donahue, *Plan Sponsor Fiduciary Duty for the Selection of Options in Participant-Directed Defined Contribution Plans and the Choice Between. Stable Value and Money Market*, 39 AKRON L. REV. 9, 24 (2006).  (In contrast to money market funds, stable value funds "can invest in longer-term financial instruments", and thus, "Stable Value Funds simply outperform Money Market Funds.").

14.     In addition to longer duration instruments generating excess returns over money

---

[2] 29 C.F.R. § 2550.404(c)-1(b)(2)(ii)(C)(2)(ii).
[3] 57 Fed. Reg. 46,906, 46,924.

market investments, stable value funds provide a guaranteed rate of return to the investor, referred to as a crediting rate, and protect against the loss of principal and accrued interest. This protection is provided through a wrap contract issued by a bank, insurance company or other financial institution that guarantees the book value of the participant's investment.

15.     Even during the period of market turbulence in 2008, "stable value participants received point-to-point protection of principal, with no sacrifice of return[.]" Paul J. Donahue, *Stable Value Re-examined*, 54 RISKS AND REWARDS 26, 28 (Aug. 2009).[4]

16.     According to the 2015 Stable Value Study published by MetLife, over 80% of plan sponsors offer a stable value fund. MetLife, *2015 Stable Value Study: A Survey of Plan Sponsors, Stable Value Fund Providers and Advisors* at 5 (2015).[5] The study also notes that stable value returns were "***more than double***" the returns of money market funds from 1988 to 2015, and 100% of stable value providers and almost 90% of financial advisors to defined contribution plans "agree that stable value returns have outperformed money market returns over the last 25 years." *Id*. at 7 (emphasis added).

17.     Unlike the vast majority of 401(k) plans, the Plan does not offer a stable value fund as its "income producing, low risk, liquid fund."

18.     Instead, the Plan offered during the class period the AA Credit Union Fund, which yielded tremendously poor returns throughout the relevant time period. The AA Credit Union Fund effectively delivered, at all material times, the returns of a poorly managed checking account.  The AA Credit Union Fund consistently failed to outpace inflation and was at all times thus a categorically imprudent retirement investment under ERISA. Therefore, Defendants violated their duties of prudence under ERISA by including it as a retirement investment option in the Plan's menu of investment options.

---

[4] *Available at* http://www .soa.org/library/newsletters/risks-and-rewards/2009/august/rar-2009-iss54-donahue.pdf (last visited Feb. 9, 2016).
[5] *Available at* https://www.metlife.com/assets/cao/institutional-retirement/2015StableValueStudy.pdf (last visited Feb. 9, 2016).

19.     For the third quarter of 2015, the investment return on the AA Credit Union Fund was 10 basis points or 0.10%.  As of November 5, 2015, the one month return for the AA Credit Union Fund was 0%, the three month return for the AA Credit Union Fund was 0.07%, the six-month return was 0.10%, and the 12-month return was 0.22%.  Similarly, as of November 29, 2015, the one month return for the AA Credit Union Fund was 0.07%, the three month return for the AA Credit Union Fund was 0.07%, the six-month return was 0.14%, and the 12-month return was 0.27%.  As of January 3, 2016, the one-month return for the AA Credit Union Fund was 0%, the three month return for the AA Credit Union Fund was 0.07%, the six-month return was 0.14%, and the 12-month return was 0.24%.

20.     At the same time, the AA Federal Credit Union has an actual checking account option called a "Priority" checking account that, according to the AA Federal Credit Union Internet site, is currently paying interest rates of up to 2.27%.  (Am. Airlines Credit Union, Flagship Checking, *available at* https://www.aacreditunion.org/checking-flagship.aspx (last visited February 8, 2016).)  So even actual checking accounts offered by AA Federal Credit Union here offer better returns than those that the AA Credit Union Fund produces.  Stable value funds – commonly used by large 401(k) plans like the Plan here – typically offer still more in return than does the AA Credit Union Fund, as one would properly expect of bona fide retirement investments.

21.     Underperformance of a plan's investment choices can have a cataclysmic effect on the accumulation of an individual's retirement savings. A difference of only 30 basis points, or three tenths of one percent, is significant in this regard. Consider an investment of $1000 over 30 years that earns 6.5%. This investment would have grown to nearly $6,600. If the same investment only earned 6.2%, the final value would only be $6,050, or 8% less. An 8% difference translates into one full extra monthly payment each year (1/12 = 8%). It is the difference, to a participant, of receiving 12 payments per year or 11 payments. A 30 basis point lower return eliminates an entire month of retirement income when a participant is living off accumulated retirement savings.

22.     On information and belief, during the relevant time period the Plan's AA Credit

Union Fund earned, *at most*, an amount that does not even come close to keeping up with inflation.[6]

23.     Hueler Analytics is the industry standard for reporting returns of stable value funds. Hueler data represents a reasonable estimate of the average returns of a typical stable value fund. The returns of the funds in the Hueler universe on average far exceeded the returns of the AA Credit Union Fund in the Plan during the class period.

24.     In light of stable value funds' clear advantages and enhanced returns compared to the AA Credit Union Fund, when deciding which fixed income investment option to include in a defined contribution plan, a prudent fiduciary would have included a stable value fund —and not the AA Credit Union Fund. Defendants imprudently and disloyally failed to do this.

25.     Had the funds invested in the AA Credit Union Fund instead been invested in a stable value fund returning average benchmark returns, as represented by the Hueler Index during the proposed class period here, Plaintiffs and other Plan participants would not have lost tens of millions of dollars of their retirement savings, and would not continue to suffer additional losses as a result of the AA Credit Union Fund being retained in the Plan.[7]

## ERISA'S FIDUCIARY STANDARDS

26.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendant as fiduciaries of the Plan. 29 U.S.C. §1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in
>
> the interest of the participants and beneficiaries and –
>
> (A)     for the exclusive purpose of
>
> > (i)  providing benefits to participants and their beneficiaries; and
> > (ii) defraying reasonable expenses of administering the plan;
>
> [and]
> (B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

---

[6] This minimal return is similar for the year 2015 through the last month of the year to date.
[7] Plan losses have been brought forward to the present value using the investment returns of the Hueler Index to compensate participants who have not been reimbursed for their losses.

27.     Under 29 U.S.C. 1103(c)(1), with certain exceptions not relevant here, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

28.     Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and solely in the interest of participants in the plan.

29.     ERISA's fiduciary duties are "the highest known to the law" and must be done "with an eye single" to the interests of participants. *Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n.8 (2d Cir. 1982).

30.     ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. 29 U.S.C. §1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty. The statute states, in relevant part, that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

(2)     if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

31.     29 U.S.C. §1132(a)(2) authorizes a plan participant to bring a civil action to enforce

a breaching fiduciary's liability to the plan under 29 U.S.C. §1109. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

## CLASS ACTION ALLEGATIONS

32.     29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

33.     In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §§1132(a)(2) and (3), Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify, and to be appointed as representative of, the following class:

> All participants and beneficiaries of the $uper $aver, a 401(k) Capital Accumulation Plan for Employees of Participating AMR Corporation Subsidiaries, who invested directly in the AA Credit Union Fund or who indirectly invested in the AA Credit Union Fund by virtue of their investment in the Moderate Pre-Mixed Portfolio or the Conservative Pre-Mixed Portfolio at any time from February 12, 2010 through the date of judgment, excluding the (i) Directors and elected officers of Defendant American Airlines; (ii) the members of the PAAC; the members of any other committee exercising fiduciary responsibility or authority with respect to the Plan, including the Benefits Strategy Committee and the Pension Benefits Administration Committee; and the Directors and elected officers of Defendant AA Credit Union.

34.     This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

> a.     The Class includes thousands of members and is so large that joinder of all

its members is impracticable.

b.      There are questions of law and fact common to this Class because the Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions and omissions alleged herein as to the Plan and not as to any individual participant. Thus, common questions of law and fact include the following, without limitation: who are the fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a); whether the fiduciaries of the Plan breached their fiduciary duties to the Plan; what are the losses to the Plan resulting from each breach of fiduciary duty; and what Plan-wide equitable and other relief the court should impose in light of Defendants' breach of duty.

c.      Plaintiffs claims are typical of the claims of the Class because each Plaintiff was a participant during the time period at issue in this action and all participants in the Plan were harmed by Defendants' misconduct.

d.      Plaintiffs are adequate representatives of the Class because they were participants in the Plan during the Class period, have no interest that is in conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent attorneys to represent the Class.

e.      Prosecution of separate actions by individual participants and beneficiaries for these breaches of fiduciary duties would create the risk of (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants in respect to the discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. §1109(a), and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

35.      A class action is the superior method for the fair and efficient adjudication of this

controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffrs are aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

36.    Plaintiff's counsel, Schneider Wallace Cottrell Konecky Wotkyns LLP, will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

**COUNT I**
**Breach of Duties of Loyalty and Prudence-**
**Failure to Remove the American Airlines Credit Union Demand Deposit Fund From the Plan**
**[As To Defendants American Airlines and the PAAC]**

37.    Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

38.    This Count alleges breach of fiduciary duties against the Defendants American Airlines and the PAAC.

39.    The scope of the fiduciary duties and responsibilities of American Airlines and the PAAC includes direct responsibility for evaluating and monitoring the Plan's investments on an ongoing basis and eliminating imprudent ones, and ensuring that the Plan offers prudent investment options that will provide meaningful financial benefits to participants.

40.    Defendants American and the PAAC maintained as a Plan investment option the American Airlines Credit Union Demand Deposit Fund. This fund, which is the functional equivalent of an interest-bearing checking account, was expected to generate and indeed generated meager returns for consecutive years that did not even come close to keeping pace with inflation.

As a result, this investment option did not provide any meaningful retirement benefits to participants, and, in fact, participants in the AA Credit Union Fund fell farther behind inflation each year in the fund.

41.     Prudent fiduciaries of defined contribution plans such as the Plan know that such minimally returning funds will not and have not kept pace with inflation. However, these Defendants failed to make a reasoned decision whether to remove the AA Credit Union Fund and substitute in its place a stable value fund, which invests in medium-term instruments that have consistently provided conservative but profitable returns.  Additionally, and most importantly in the retirement context, stable value funds do this while offering greater protection through a *guaranteed* rate of return through wrap insurance policies that are standard practice in stable value funds. Had Defendants considered a stable value fund and weighed the benefits and higher returns relative to the AA Credit Union Fund, they would have offered a stable value fund and removed the AA Credit Union Fund.  Doing so would have provided far higher returns than the AA Credit Union Fund without any increase in risk to Plaintiffs and the proposed Class. Maintaining the Plan's investment in the AA Credit Union Fund, while failing to offer a stable value fund as a core investment option, cost the Plan millions of dollars in losses compared to what the Plan would have earned if invested in a stable value fund alone rather than the AA Credit Union Fund.

42.     Defendant is liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate.

43.     Defendant American Airlines also knowingly participated in the breach of the Defendant AA Credit Union, knowing that such acts were a breach, which enabled the Defendant AA Credit Union to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by Defendant AA Credit Union and failed to make any reasonable effort under the circumstances to remedy the breach, and thus each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. §1105(a).

**COUNT II**
**Breach of Duties of Loyalty -**
**Dealing With Plan Assets For its Own Account**
**[As to Defendant AA Credit Union]**

44.     Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

45.     This Count alleges breach of fiduciary duties against the Defendant AA Credit Union.

46.     ERISA § 406(b)(1), 29 U.S.C. §1106(b)(1), prohibits a fiduciary from dealing with the assets of a plan in its own interest or for its own account.

47.     At all relevant times, Defendant AA Credit Union held one billion dollars in plan assets in demand deposit accounts for which it was required to pay a reasonable rate of interest. Defendant AA Credit Union used those plan assets to provide loans to Credit Union members and to make other investments and for which it earned substantial income, which in turn permitted Defendant AA Credit Union to offer substantially higher interest rates on similar demand deposit accounts to other customers of the AA Credit union than it provided to Plan participants.

48.     Under ERISA, a fiduciary's investment decisions must be prudent not in the abstract but with reference to the specific goals of a particular investment fund.  A fiduciary must give "appropriate consideration" to facts and circumstances relevant to "the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties." 29 C.F.R. § 2550.404a-1(b)(i).  Thus, a fiduciary's investment decisions are evaluated under ERISA "in light of the character and aims of the particular type of plan he serves." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (4th Cir. 1996).

49.     The relevant facts and circumstances in this case required that Defendant AA Credit Union offer to Plaintiffs and the proposed Class at least the same rate of interest it was offering to its other customers.

50.     Instead, Defendant AA Credit Union used Plan assets to benefit itself and its other

customers in violation of 29 U.S.C. §1106(b)(1) resulting in significant losses for the Plan and members of the proposed Class.

51.     Defendant is liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate.

**COUNT III**
**Prohibited Transaction**
**[As to Defendants American and the PAAC]**

52.     Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

53.     ERISA § 406(a) expressly prohibits the furnishing of services between a plan and a party-in-interest.

54.     The definition of "party-in-interest" includes any person providing services to the Plan and any fiduciary to the Plan.

55.     At all relevant times, Defendant AA Credit Union was providing services to the Plan, and was thus a party-in-interest to the Plan.

56.     ERISA § 408(b) lists the limited exceptions to the blanket prohibition of ERISA § 406(a).  Many are facially inapplicable to the instant case (e.g. those involving loans to employees or to related employee stock ownership plans), but ERISA § 408(b)(4) addresses the investment of depositing plan assets with a bank that is a fiduciary of the plan.  Specifically, the exception in ERISA § 408(b)(4) *only* permits plan assets to be invested in deposits in a bank that is also a party-in-interest to the Plan *if* it is an investment "***in deposits which bear a reasonable interest rate*** . . . ."

_____

57.     Under the facts and circumstances of this case, and in particular given the interest rate provided by Defendant AA Credit Union to its other customers through similar products, the interest rate provided by Defendant AA Credit Union was not a reasonable interest rate.  Therefore, the investment of Plan assets in AA Credit Union demand deposits accounts by Defendant American Airlines, as a fiduciary to the Plan, constitutes a prohibited transaction.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

- find and declare that the Defendants have breached their fiduciary duties as described above;

- find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

- determine the method by which Plan losses under 29 U.S.C. §1109(a) should be calculated;

- order Defendants to provide an accounting necessary to determine the amounts Defendants must make good the Plan under §1109(a);

- remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

- surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

- certify the Class, appoint each of the Plaintiffs as a class representative, and appoint Schneider Wallace Cottrell Konecky Wotkyns LLP as Class Counsel;

- award to the Plaintiffs and the Class their attorney's fees and costs under 29 U.S.C. §1132(g)(1) and the common fund doctrine;

- order the payment of interest to the extent it is allowed by law; and

- grant other equitable or remedial relief as the Court deems appropriate.


Dated: February 10, 2016                         Respectfully submitted,

                                                 SCHNEIDER WALLACE COTTRELL
                                                 KONECKY WOTKYNS LLP

                                        By:      /s/ Peter B. Schneider
                                                 Peter B. Schneider
                                                 **SCHNEIDER WALLACE COTTRELL
                                                 KONECKY WOTKYNS LLP**
                                                 3700 Buffalo Speedway, Suite 1100
                                                 Houston, Texas 77098
                                                 Telephone: (713) 338-2560
                                                 Facsimile: (866) 505-8036
                                                 pschneider@schneiderwallace.com

                                                 Garrett W. Wotkyns, * (to be admitted *pro
                                                 hac vice*)
                                                 John N. Nestico, CT Bar No. 102718* (to be
                                                 admitted *pro hac vice*)
                                                 Michael C. McKay, AZ Bar No. 023354*
                                                 (to be admitted *pro hac vice*)
                                                 **SCHNEIDER WALLACE COTTRELL
                                                 KONECKY WOTKYNS LLP**
                                                 8501 North Scottsdale Road, Suite 270
                                                 Scottsdale, Arizona 85253
                                                 Telephone: (480) 428-0142
                                                 Facsimile: (866) 505-8036
                                                 gwotkyns@schneiderwallace.com
                                                 jnestico@schneiderwallace.com
                                                 mmckay@schneiderwallace.com

                                                 Todd M. Schneider CA Bar No. 158253* (to
                                                 be admitted *pro hac vice*)
                                                 Mark T. Johnson CA Bar No. 76904* (to be
                                                 admitted *pro hac vice*)
                                                 Kyle G. Bates CA Bar No. 299114* (to be
                                                 admitted *pro hac vice*)
                                                 **SCHNEIDER WALLACE COTTRELL
                                                 KONECKY WOTKYNS LLP**
                                                 2000 Powell Street, Suite 1400

Emeryville, California 94608
Telephone: 415-421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
mjohnson@schneiderwallace.com
kbates@schneiderwallace.com