IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SALVADORA ORTIZ and THOMAS SCOTT, | § § § | |
| Plaintiffs, | § § | |
| | § | CIVIL ACTION NO. 4:16-cv-00151-A |
| v. | § § | |
| AMERICAN AIRLINES, INC., THE AMERICAN AIRLINES PENSION ASSET ADMINISTRATION COMMITTEE and AMERICAN AIRLINES FEDERAL CREDIT UNION, | § § § § § § | |
| Defendants | § § | |

**APPENDIX IN SUPPORT OF PLAINTIFFS'**
**NOTICE OF FILING OF EXPERT REPORT**

Plaintiffs SALVADORA ORTIZ and THOMAS SCOTT submit this Appendix in support

of their Notice of Filing of Expert Report:

| Exhibit | Description | Appendix Page |
|---|---|---|
| A | Declaration of Jonathan T. Suder | APPX1 |
| 1 | Expert Report of Neil Librock, with Exhibits:<br>• Exhibit A - CV<br>• Exhibit B - statement of compensation<br>• Exhibit C - documents considered<br>• Exhibit 1 - spreadsheet<br>• Exhibit 2 – spreadsheet | APPX3<br>APPX20<br>APPX29<br>APPX31<br>APPX33 |

1

Dated:  July 10, 2020                    Respectfully submitted,

                                         /s/ Jonathan T Suder
                                         jts@fsclaw.com
                                         Michael T Cooke
                                         mtc@fsclaw.com
                                         FRIEDMAN SUDER & COOKE PC
                                         Tindall Square Warehouse # 1
                                         604 E 4th Street, Suite 200
                                         Fort Worth, TX 76102
                                         Phone:  817-334-0400
                                         Fax:  817-334-0401

                                         Peter Schneider
                                         pschneider@schneiderwallace.com
                                         SCHNEIDER WALLACE COTTRELL KONECKY, LLP
                                         3700 Buffalo Speedway, Ste. 1100
                                         Houston, TX 77098
                                         Phone:  713-338-2560
                                         Fax: 866-505-8036

                                         Todd M. Schneider
                                         tschneider@schneiderwallace.com
                                         Kyle G. Bates
                                         kbates@schneiderwallace.com
                                         SCHNEIDER WALLACE COTTRELL KONECKY, LLP
                                         2000 Powell Street, Suite 1400
                                         Emeryville, CA 94608
                                         Phone:  415-421-7100
                                         Fax: 415-421-7105

                                         **ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of July, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, Fort Worth Division using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.


/s/ Jonathan T. Suder

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SALVADORA ORTIZ and THOMAS SCOTT, | § § § | |
| Plaintiffs, | § § § | CIVIL ACTION NO. 4:16-cv-00151-A |
| v. | § § | |
| AMERICAN AIRLINES, INC., THE AMERICAN AIRLINES PENSION ASSET ADMINISTRATION COMMITTEE and AMERICAN AIRLINES FEDERAL CREDIT UNION, | § § § § § § | |
| Defendants | § | |

**DECLARATION OF JONATHAN T. SUDER IN SUPPORT OF
PLAINTIFFS' NOTICE OF FILING EXPERT REPORT**

I, Jonathan T. Suder, declare that the following is true and correct:

1.      I am a founding shareholder of Friedman, Suder & Cooke, P.C., which is located within the Northern District of Texas, and am one of the counsel of record from my firm representing Plaintiffs Salvadora Ortiz and Thomas Scott in the above-captioned action.

2.      I have personal knowledge of the facts described in this declaration. If called upon to do so, I could testify to the matters stated herein.  I respectfully submit this declaration in support of Plaintiffs' Expert Disclosure.

3.      Attached hereto as Exhibit 1 is a true and correct copy of the expert report of Neil Librock, with attachments.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 10, 2020.

/s/ Jonathan T. Suder

1

# EXHIBIT 1

**Expert Report of Neil Librock**

In the matter of:

*SALVADORA ORTIZ and THOMAS SCOTT, on behalf of themselves and others similarly*

*situated,*

*Plaintiffs,*

*v.*

*AMERICAN AIRLINES, INC.*

*THE AMERICAN AIRLINES PENSION ASSET ADMINISTRATION COMMITTEE and*

*AMERICAN AIRLINES FEDERAL CREDIT UNION*

*Defendants*

Case 3:16-cv-00380-K

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

**July 10, 2020**

APPX4

I.      INTRODUCTION AND OVERVIEW ...............................................................................3

        A.      QUALIFICATION OF EXPERT ................................................................................3

        B.      SCOPE OF ASSIGNMENT .....................................................................................4

        C.      SUMMARY OF OPINIONS .....................................................................................5

II.     TIME VALUE OF MONEY AND FUTURE VALUE ARE THE CORNERSTONES OF SOUND

FINANCIAL ANALYSIS .............................................................................................................7

        A.      FUTURE VALUE OF MONEY - BACKGROUND .........................................................7

        B.      ANNUITY FV CALCULATIONS .............................................................................7

III.    DAMAGES SUFFERED BY NAMED PLAINTIFFS ORTIZ AND SCOTT .....................................8

        A.      DAMAGES CALCULATION METHODOLOGY ...........................................................8

        B.      BACKGROUND – PLAINTIFFS ORTIZ AND SCOTT ..................................................9

        C.      SINGLE PAYMENT FV CALCULATIONS .................................................................9

        C.      ORTIZ PLAN PARTICIPATION DETAILS AND DAMAGES .........................................10

        C.      SCOTT PLAN PARTICIPATION DETAILS AND DAMAGES ........................................11

IV.     DAMAGE CALCULATIONS FOR ALL PARTICIPANTS WHO INVESTED IN THE CREDIT

UNION OPTION ......................................................................................................................11

        A.      ALL PARTICIPANTS RECEIVED POOR INVESTMENT RETURNS ON THEIR CREDIT UNION OPTION INVESTMENTS ...............11

        B.      PLAN MEMBERS SUFFERED DAMAGES EACH YEAR THEY WERE INVESTED IN THE CREDIT UNION OPTION .....................13

        C.      MEMBER'S YEARLY AGGREGATE FUND DAMAGES CALCULATIONS ........................13

V.      –CLASSIFICATION OF THE CREDIT UNION OPTION FOR INTEREST/DIVIDEND

PURPOSES ..............................................................................................................................14

VI.     CONCLUSION ...............................................................................................................15

APPX5

## I.    INTRODUCTION AND OVERVIEW

### A.    Qualification of Expert

1.    My name is Neil Librock.  I am a Managing Director at Berkeley Research Group, LLC, an economic and financial consulting firm headquartered in Emeryville, California.  I specialize in consumer finance issues and have significant experience in financial modeling, various financial assets and investments, and the value of investments at some future point.

2.    I have over 30 years of experience managing consumer finance operations, including various asset valuation techniques, "know your customer" requirements and responsibilities, maximizing return on investments, and prudent financial management at major banks such as Wells Fargo and Citicorp. At Wells Fargo I was the Executive Vice-President and Senior Credit Officer responsible for financial related matters for a $400 billion consumer portfolio.

3.    At Citicorp, Bank of America, and Wells Fargo I managed product pricing and profitability. I am an expert in pricing for risk versus reward and for suitable financial products for various customer classes.

4.    I was a member of the Wells Fargo Fair and Responsible Lending executive committee overseeing all consumer credit finance activities including product selection and pricing. This committee ensured individual borrowers were treated in a customer-centric and legally compliant manner regarding their personal financial planning.

5.    Since 2012, I have been a member of the faculty at California State University East Bay, where I teach courses in both financial theory and personal financial planning. Included in my course materials are financial valuation techniques to identify optimal risk / reward trade-offs. In my personal financial planning course, for example, students analyze various potential

APPX6

401(k) investment alternatives, including investments such as stable value funds. I have received the "Outstanding Lecturer Award" from my fellow faculty members.

6.      I have an Economics B.A. degree from the Ohio State University and an MBA degree with a Finance concentration from the University of Rochester. I am an expert in financial valuation, alternate investments, and selecting optimal financial solutions. I am an expert in computing and comparing the future values of potential investments.

7.      During my tenure at the Berkeley Research Group I have prepared expert reports and testified at deposition and trial regarding consumer finance matters. My curriculum vitae is attached as Exhibit A, which includes the cases in which I have testified in the past four years and publications I have authored in the previous ten years.

8.      Berkeley Research Group, LLC is being compensated at a rate of $500/hour for my work and at standard hourly rates for its staff. Compensation is not contingent upon my analysis or the outcome of this matter.  A statement of my compensation is attached as Exhibit B.

**B.      Scope of Assignment**

9.      I have been retained by Plaintiffs in this case, which is pending in the United States District Court for the Northern District of Texas. This matter involves issues related to a retirement plan.

10.      The American Airlines retirement plan was previously referred to as the "$uper $aver Plan" and in 2015 was re-named the American Airlines 401(k) Plan (The "Plan").

11.     I have been asked to provide relevant background on the analytic framework [1] used to evaluate various retirement plan investments, including Plan investments in the AA Federal Credit Union Option (the "Credit Union Option"). I will compare the interest credited to Plan participants' investments the Credit Union Option versus (i) the total interest credited on all AAFCU membership shares and deposits, as well as the interest credited on AA Federal Credit Union Regular Shares and Individual Retirement Accounts.

12.     I have also been asked to demonstrate, through financial calculations, the economic impacts of various potential retirement plan investment choices. In addition, I have been asked to analyze the financial impact of the Credit Union Option as it relates to Plaintiffs Ortiz and Scott and a larger group of Plan participants ("The Participants").

13.     The facts and data I considered in forming my opinions include Plaintiffs' pleadings, public financial records filed by American Airlines ("AA"), Credit Union Option and Plan documents, financial valuation calculations, minutes of meetings of the board of directors of the American Airlines Federal Credit Union (the "AAFCU"), and industry research. See Exhibit C for a list of the facts and data I considered in forming my opinions.

14.     I reserve the right to amend or supplement my report and/or opinions should additional relevant information become available.

15.     I am not an attorney and I do not offer legal opinions in this report.

**C.     Summary of Opinions**

16.     This matter involves two named Plaintiffs, Salvadora Ortiz ("Ortiz") and Thomas Scott ("Scott") and a larger group of Plan participants ("The Participants").

---

[1] Time Value of Money and Future Value calculations are the academic and financial industry tools to evaluate and compare various financial scenarios. See Section II in this report.

17.     An investment's rate of return is a key factor in determining the value of the investment at some future point in time, such an employee's retirement. Standard financial modeling tools allow us to compare the future values of various types investments.

18.     The historic rate of return on the AA Credit Union Option has been very low, averaging only 50 basis points (one-half of one percent) over the nine-year analysis period, and at times as low as 0.1% . This very low rate of return means that employee retirement contributions into the Credit Union Option generate very low future value for the employees. In fact, over the past 10 years, the Credit Union Option's rate of return has been significantly less than the U.S. inflation rate, meaning employees are actually worse off for having invested their retirement savings in the Credit Union Option rather than simply holding cash in their homes.

19.     For each year from 2013 – 2018 the Fund rate of return was significantly lower than other AAFCU member deposit accounts, even though prior to 2013 the Credit Union Option earned the same interest rate as typical shares of the Credit Union and Individual Retirement Accounts (also known as "IRAs") invested with the Credit Union. The Credit Union Option, which is tied to a large long-term retirement account, is a more stable source of deposits and, in a competitive banking market, should offer rates of return equivalent to certificates of deposit.  In my opinion, the rates of return for the Credit Union Option from 2010-2018 were not competitive.

20.     Plaintiffs Ortiz and Scott suffered lost financial opportunity due to their investments in the Credit Union Option. Stated differently, Ortiz and Scott could have had more retirement savings if their investments had been placed in a product with a more competitive interest rate.  Ms. Ortiz suffered lost economic opportunity of approximately $1,116 (without compounding) from January 1, 2010 through August 5, 2016. Mr. Scott suffered lost economic opportunity of approximately $1,843 from January 1, 2010 through October 21, 2011.

6

21.     Similarly, the Participants (and the Plan as a whole) suffered lost economic opportunity of approximately $61,281,000 from January 1, 2010 through December 31, 2018 (without compounding) from investments in the Credit Union Option.

## II.     TIME VALUE OF MONEY AND FUTURE VALUE ARE THE CORNERSTONES OF SOUND FINANCIAL ANALYSIS

### A.  Future Value of Money - Background

22.      Future Value ("FV") is defined as "The amount to which an investment will grow after earning interest."[2] The FV of an investment depends on (1) the amount invested, (2) the length of the investment, and (3) the rate of return on the investment.

23.     In this matter, I will focus on the rate of return. Each Plan participant may have a different level of investment for different time frames (higher-paid employees may be able to invest more and younger employees may have a longer investment timeline, for example) but all Plan employees are presented the same investment options.

24.     FV can be calculated for a *single payment* (one time), perhaps saving a gift, or a *series of payments over time* (an annuity), such as annual contributions to a retirement plan. The key component of FV is compound interest where the interest earned in the first investment period is added to initial investment and then the rate of return compounds on the ever increasing investment value.

### B.     Annuity FV Calculations

25.     Retirement accounts typically involve annual [3] employee contributions over a number of years. This pattern is called an annuity. The annuity formula is:

---

[2] Fundamentals of Corporate Finance, 7e, Brealy, Myers, and Marcus, p. 114. This is a widely used finance text which I use teaching in my college courses.
[3] 401(k) and similar retirement plans usually have annual contributions prorated monthly. We will assume 1 annual contribution for this example.

$$FV \ of \ Annuity = P \left[ \frac{(1+r)^n - 1}{r} \right]$$

$P = Periodic \ Payment$
$r = rate \ per \ period$
$n = number \ of \ periods$

26.     Using these same assumptions[4], the calculations show:

➤  FV Credit Union Option        $20,384

➤  FV Priority Checking          $24,786

Once again, a 2% difference in interest rate, applied over 20 annual retirement account

contributions, has a significant impact on the total retirement account balance.

## III.     DAMAGES SUFFERED BY NAMED PLAINTIFFS ORTIZ AND SCOTT

### A.  Damages Calculation Methodology

27.     We know from the Plaintiffs' annual Plan statements their total Fund balances and

the rate of return on the Fund. We also know from AAFCU Annual Reports the total deposits and

the interest paid and the rates of return for all other AAFCU members deposit accounts. These

facts are presented in Exhibit 1 to this report.

28.      Based on that data, I then calculated the Plaintiff's actual annual Fund earnings

and compared that to what their Fund earnings would have been had they earned the total AAFCU

return on all member's deposits. The difference is the damages suffered by the Ms. Ortiz and Mr.

Scott.

---

[4] $1000 invested every year for 20 years for both investments. The Credit Union Option rate of return is 0.2% and
the Priority Checking rate of return is 2.2%.

### B.  Background – Plaintiffs Ortiz and Scott

29.  Plaintiffs Ortiz and Scott were American Airlines employees and long time-participants in the Plan.[5]

30.  I have reviewed in detail the annual Plan Statements for both Plaintiffs.  I have reviewed actual rates of return on the Fund investment and compared that return to the average return provided by the AA Credit Union on deposits other than Plan deposits to calculate damages suffered by the Plaintiffs.  A summary of the relevant calculations is attached as Exhibit 2.

31.  As an alternative measure, I also calculated Plan damages assuming that the Plan had been credited with the same interest rates credited to Regular Shares and IRAs, as was the case in 2010 – 2012.  I am unaware of why those rates changed in 2013 and later.

32.  I will present damage analysis both for annual Fund contributions and for total Fund investment balances.

### C.    Single Payment FV Calculations

33.  First, consider the FV calculation for a *one-time payment*. The formula is: $FV = PV \times (1+r)^t$ where:

> ➢  FV = Future Value

> ➢  PV = Present Value (how many dollars do you invest today)

> ➢  R = the rate of return on the investment

> ➢  T = the length of time (typically in years) of the investment

Now, assuming a $1000 investment for 20 years (a long term retirement account) and one investment with a 1% annual return and another with a 3% annual return we find:

---

[5] My review and analysis covers the period 2010 – 2018.

> ➢ FV: 1% annual return $1220

> ➢ FV: 3% annual return $1806

As shown above, a 2% difference in rate of return results in a profound difference in the balance of the employee retirement account over the course of 20 years.  Specifically, a difference of $11,720 over that 20-year period per $1,000 invested.

## C.  Ortiz Plan Participation Details and Damages

34.    Ms. Ortiz was an active Plan participant during the year 2010. Focusing on just her Fund account invested in the AA Credit Union Option, she started the year with a balance of $16,859, contributed $3,756 throughout the year, and ended 2010 with an AA Credit Union Option account balance of $20,802, including $187 in earnings on her investments in the Credit Union Option in the Plan.[6]

35.    Her $187 Credit Union Option earnings represented a 1% return on her  balance invested in the AA Credit Union Option.[7] She suffered damages of approximately $114 during 2010 compared to earning a 1.60% effective return on all AA deposit accounts excluding the Credit Union Option.[8]

36.    For the period 2010 – 2016, Ms. Ortiz's investments in the Credit Union Option averaged about $22,000.[9] Damages for this six-year period, based on a return differential of the Credit Union Option compared to the effective member return, was more than $1,100 without compounding; that is, without including future interest on the lost earnings.

---

[6] Salvadora Ortiz $uper $aver 401 (k) Plan Statement Period January 01, 2010 – December 31, 2010. Bates AA-Ortiz_Litigation0000089
[7] Based on a beginning balance of $16,858 and an ending balance of $20,801 for an average balance of $18,829
[8] See Exhibit 1 for all return information
[9] Various $uper $aver statements at Bates AA-Ortiz Litigation ending in 089, 101,109, 115, 125, and 133

### C. Scott Plan Participation Details and Damages

37.     Mr. Scott was an active Plan participant in 2010. His beginning balance in the Credit Union Option was $368,950.  He transferred out of the Credit Union Option entirely on or about January 11, 2010, and the reinvested approximately $200,800 on or about October 19, 2010. That amount, plus additional contributions of approximately $5,600, plus earnings, remained invested in the Credit Union Option until he transferred the entire amount again on or about October 21, 2011.[10] His earnings during that period totaled $1,920, but he should have earned $3,763. He suffered damages of approximately $1,843.

## IV.     DAMAGE CALCULATIONS FOR ALL PARTICIPANTS WHO INVESTED IN THE CREDIT UNION OPTION

### A. All Participants received poor investment returns on their Credit Union Option investments

38.     Every Plan member received an Annual Statement summarizing their invested dollars, Plan earnings, and investment rate of return for each investment category, such as the Credit Union Option.

39.     For example, the Ortiz 2014 Annual Statement showed:[11]

| Asset Class and Fund Name | 3 Months | 1 Year | 3 Years | 5 Years | Average 10 Years |
|---|---|---|---|---|---|
| **Cash Alternatives** | | | | | |
| **Stable Asset** | | | | | |
| AA Fed Credit Union | 0.06 | 024 | 0.33 | 0.57 | 1.93 |
| Citi *Treasury Bi/13 Mon* | *0.01* | *0.04* | *0.06* | *0.08* | *1.47* |

—

---

[10] Thomas Scott 2010 Annual Statement at Bates AA-Ortiz_Litigation0000150.
[11] Bates AA-Ortiz_Litigation0000127.

40.     This excerpt shows that for the three most recent months (Q4:2014) the Credit Union Option had a 0.06% rate of return and only 0.24% for the entire year.

41.     Exhibit 1 shows the annual reported Credit Union Option return and the calculated effective Member deposit return without the Credit Union Option component. These returns[12] are summarized in the table below:

| Year | Plan Rate | Effective Member Rate | Plan Rate Shortfall |
|------|-----------|-----------------------|---------------------|
| 2010 | 101bp | 160bp | (49)bp |
| 2011 | 83bp | 144bp | (61)bp |
| 2012 | 51bp | 116bp | (65)bp |
| 2013 | 24bp | 116bp | (92)bp |
| 2014 | 24bp | 117bp | (93)bp |
| 2015 | 11bp | 115bp | (104)bp |
| 2016 | 50bp | 126bp | (76)bp |
| 2017 | 93.75bp | 142bp | (48.25)bp |
| 2018 | 110bp | 178bp | (68)bp |

---

[12] I express the rates of return in basis points (bp) where 1 basis point equals 1/100 of 1% and 100bp = 1%. This is the standard calibration in financial services.

APPX15

**B.  Plan members suffered damages each year they were invested in the Credit Union Option**

42.     The Credit Union Option offered very low rates of return, considerably less than other AACFU deposit accounts.  As such, each Plan participant invested in the Credit Union Option suffered damages due to substandard rates of return. Their retirement plan growth was stunted by the Fund rate of return.

43.     The Credit Union Option represented a significant portion (by dollars and percent) of AAFCU deposits, totaling over $1 billion dollars for each of 2009 – 2018, and representing an average annual balance of $1,225, 263, and on average more than twenty percent of all AAFCU member deposits.

44.     All participants invested in the Credit Union Option received the same product offering with the same rate of return. Therefore, we can calculate aggregate damages, based on the total dollar size of the Plan's holdings and substandard (compared to an index) rate of return. Individual damages can be apportioned by each member's percentage ownership of the Credit Union Option.

**C.  Plan Yearly Aggregate Fund Damages Calculations**

45.     Damage calculations are presented in Exhibit 1 to this report. In summary, damages, for all Plan participants are about $61 million for the nine-year period 2010 – 2018. These calculations are further reflected in the spreadsheets attached as Exhibits 1 and 2 to this report.

46.     The damages are the result of (a) very low rates of return (b) applied to a very large ($ billion plus) retirement portfolio. Participants' actual Credit Union Option investment returns were historically and remain today so low that their Credit Union Option investments saw very limited growth.

13

## V.      CLASSIFICATION OF THE CREDIT UNION OPTION FOR INTEREST/DIVIDEND PURPOSES

47.      I noted previously that Plan accounts invested in the Credit Union Option should be receiving a return similar to that of a certificate of deposit, and that in my opinion the Credit Union Option's rate of return from 2010-2018 was not competitive.

48.      Considering that total Plan deposits in the Credit Union Option have exceeded $1 billion for each of the last 10 years, Plan participants appear to be using the Credit Union Option for long-term investment. It is, therefore, a very stable asset base.

49.      There are virtually no expenses associated with the Credit Union Option. There are no checks written on the accounts and no overdrafts.

50.      Plan deposits have provided, on average, nearly 24% of the Credit Union's working capital for each of the last ten years.   But the Credit Union Option (and the Plan participants who invested in it) did not receive a commensurate proportion of the interest paid by the Credit Union during that same time.

51.      In 2012, for example, the Plan provided the Credit Union with 25% of its total deposits but received only 14.6% of the interest credited on deposits. In 2015 when the Plan represented 22.3% of deposits, it received only 2.5% of the total interest credited to all deposits. So, while all other deposits received an average interest rate of 116 basis points, the Plan account received only 11 basis points.

52.      All of the features of the Credit Union Option indicate that the Plan participants should be receiving one of the highest rates of interest offered by the Credit Union's suite of products.  Instead, they received one of the lowest.

## VI.   CONCLUSION

53.     At an absolute minimum, the Plan's investment in the Credit Union Option should have continued to receive the same interest rate credited to Regular Shares and IRAs of the Credit Union.  That apparently was the practice until 2013.

54.     The nature of the Credit Union Option, however, in that it provided a stable and virtually expense-free source of capital for the Credit Union, should have justified one of the highest rates offered by the Credit Union on any form of deposit account.  However, other products offered by the Credit Union during the same time period received much higher returns.

55.     In my opinion, the rates of return offered to Plan participants who invested in the Credit Union Option from 2010-2018 were not competitive, and Plan participants lost investment income as a result.

APPX18

_Neil M. Librock_

Neil M. Librock

Emeryville, California


Dated:  July 10, 2020

APPX19

# Exhibit A

Curriculum Vitae



**NEIL M. LIBROCK**

BERKELEY RESEARCH GROUP, LLC

2200 Powell Suite, Suite 1200

Emeryville, CA 94608

Direct: 510.285.3253

Cell: 415.298.1552

nlibrock@thinkbrg.com

**EDUCATION**

MBA, Finance, University of Rochester (NY)
Full tuition academic scholarship

B.A. (with Honors), Economics, the Ohio State University
Phi Beta Kappa
University Housing Resident Advisor

**PROFESSIONAL CAREER SUMMARY**

Financial Services Consultant, 2012 – present

University Finance and Financial Literacy Instructor, 2012 – present

Banking and Credit Risk Executive – 30+ years' experience

**CONSULTING ENGAGEMENTS**

*Campus Oaks Apartments v. Dahlin Group and BBC Roseville Oaks:* Prepared defendant's expert testimony re: industry standards for commercial real estate construction lending. Testified at deposition and trial. Case No. SCV0040173, Superior Court of California, County of Placer

*Willie Henderson, et al. v. General Revenue Corporation:* Prepared defendant's expert report re: student loan structures, repayment plans, and loan amortization. Testified at deposition. Civil Action No. 7:17-CV-00292, United States District Court, Western Division of Virginia

*Hayworth v. 1st Financial Bank:* Prepared defendant's expert report re: mix-merged credit bureau reports and alleged plaintiff damages. Deposition pending. Case No. 1:18-CV-03106-RM-KLM, United States District Court, District of Colorado

*CapLOC v. American Southwest Mortgage Corp., et al.:* Prepared plaintiff's expert report re: residential mortgage warehouse lending standards and problem and out-of-trust loans. Case settled prior to deposition. Case No. 3:17-CV-02904, United States District Court, North District of Texas, Dallas Division



**CONSULTING ENGAGEMENTS – Continued**

*Midwest American Federal Credit Union, et al. v. Arby's Restaurant Group:* Prepared plaintiff's expert declaration re: bank's responsibilities and reasonable business actions to mitigate Arby's customer data breach. Deposition pending. Civil Action No. 1:17-CV-514-AT, United States District Court, Northern District of Georgia, Atlanta Division

*Ocwen Loan Servicing v. Mortgage Guaranty Insurance Corporation:* Prepared plaintiffs expert report re: mortgage insurance rescissions and curtailments. Case settled prior to deposition. Case No. 01-15-0005-0218, American Arbitration Association.

*Lennar Corp. Administrative Hearing, Palm Beach County Workforce Housing Program:* Prepared testimony re: restrictive housing covenants and their impact on mortgage availability.

*James Banneck v. Federal National Mortgage Association:* Prepared defendant's expert reports and testified at deposition re: mortgage short sales and credit bureau reporting, automated vs. manual underwriting, and certain aspects of Mr. Banneck's loan applications. Case No. 3:17-cv-04657-WHO, United States District Court, Northern District of California.

*GF Finance; Stephen Hansen v. Citizens Community Credit Union:* Prepared defense analysis including customary commercial vehicle lending practices re: corporate malfeasance and borrower personal guarantees. Matter settled prior to deposition. Case No. 2:16-bk-10282, United States Bankruptcy Court, District of Arizona.

*Griffin Transportation, et al v. Hungerford Aldrin, Nichols, & Carter:* Prepared underwriting analysis of commercial transportation loans and troubled loan recognition re: financial borrowing covenants. Matter settled prior to deposition. Case No. 16-08800-CBB, State of Michigan, Kent County.

*Ocwen Loan Servicing v. Radian Guaranty:* Prepared plaintiffs expert and rebuttal reports and testified at deposition re: mortgage insurance rescissions, denials, and curtailments. Case No. 2:16-cv-06586-MAK, U.S. District Court, Eastern District of Pennsylvania.

*McCalmont v. Federal National Mortgage Association:* Prepared defendant's expert reports and testified at deposition re: the U.S. residential mortgage crisis and the rise in short sale settlements, automated vs. manual underwriting and the risks of hard money lending. Case No. 2:13-cv-02107-JJT, United States District Court, District of Arizona.

*Walsh v. Federal National Mortgage Association:* Prepared defendant's expert reports and testified at deposition re: mortgage short sales and credit bureau reporting and automated vs. manual underwriting. Case No. 15-cv-00761-PHX-JJT, United States District Court, District of Arizona.

*CFPB v. Nationwide Biweekly Administration:* Prepared plaintiff's expert reports and testified at deposition and trial re: mortgage payments, amortization, and certain of the defendant's business practices. Verdict in favor of the CFPB. Case No. 15-cv-02106-RS, United States District Court, Northern District of California.

*Husain v. Bank of Guam:* Prepared defendant's expert testimony re: lender standard of care in commercial loan credit underwriting and periodic renewal. Case settled prior to deposition



**CONSULTING ENGAGEMENTS – Continued**

*Weiner v. Ocwen:* Prepared defendant's expert testimony and testified at deposition re: customer service and loss mitigation practices for seriously delinquent residential mortgage loans. Case No. 2:14-cv-02597-MCE-DB, United States District Court, Eastern District of California

*Conan Hayes v. The Superior Court of the County of Orange:* Prepared plaintiff's expert testimony re: mortgage short sales as an alternative to foreclosure and strategic default. Case dismissed prior to trial.

*Confidential Consulting:* Prepared analysis and estimated Allowance for Loan and Lease Losses shortfall for failed bank loan portfolio to support potential litigation against bank auditors.

*FDIC as Receiver of R-G Premier Bank of Puerto Rico v. Ace Insurance:* Prepared plaintiff's expert report re: alleged fraudulent loan underwriting and loan funding by bank credit staff. Case settled prior to deposition.

*Fifth Third Bank v. Concord Capital Management:* Provided plaintiff with consulting on collateral-dependent commercial loan underwriting standards and the segregation of credit underwriting and sales responsibilities.

*Bank of New York Mellon as Trustee for CWABS, Inc. ABS Series 2006-18 v. City of Morgan Hill:* Prepared plaintiff's testimony and testified at deposition re: residential mortgage underwriting standards and predatory lending / HOEPA definitions and practices. Case settled prior to trial. Case No. 1-15-CV-279257, Superior Court of California, In and for the County of Santa Clara

*USA v. Raza, et al.:* Prepared defendant's expert testimony re: industry practices and secondary market sales standards under an originate-to-sell residential mortgage model.  Verdict in favor of plaintiff.  Case pending appeal. Criminal No. 1:15-CR-118, United States District Court, Eastern District of Virginia

*Banco Popular de Puerto Rico v. FDIC in its Capacity as Receiver for Westernbank Puerto Rico:* Prepared defendant's expert report and rebuttal reports and testified at deposition and American Arbitration Association hearing re: usual and prudent underwriting standards and purchase credit impaired accounting for commercial real estate loans. Arbitration Board ruled in favor of FDIC. AAA No.: 01-15-0002-9507.

*United States of America v. David Gibson, Kevyn Rakowski, Bob Harra, and Bill North:* Prepared plaintiff's expert testimony re: standards of practice for commercial real estate ADC loan administration and timely and accurate problem loan identification and reporting. All defendants guilty on all counts. Criminal Action No. 15-23-RGA, United States District Court, District of Delaware.

*Patrick Kealy v. Ford Motor Credit Company, LLC:* Prepared defendant's expert analysis regarding borrower's application for credit, use of loan proceeds and management of construction projects. Testified at trial. Case No. BC497696, Superior Court of the State of California, County of Los Angeles.



**CONSULTING ENGAGEMENTS – Continued**

*First Farmers & Merchants Bank, et al v. Target Corporation:* Prepared plaintiff's expert declaration and testified at deposition re: bank's responsibilities and reasonable business actions to mitigate Target's customer data breach. Case settled in plaintiff's favor for $39 million. MDL No.14-2522, United States District Court, District of Minnesota

*Montgomery et al v. Experian Information Solutions, Inc. and Datamyx, LLC:* Prepared defendant's expert report re: regulatory guidance and industry practices for credit bureau screening and firm offers of credit. Case settled prior to deposition.

*Loree Jordan-Macius v. One West Bank:* Prepared defendant's expert analysis and rebuttal re: residential mortgage servicing and loan modifications. Case dismissed prior to deposition.

*Performing Arts, LLC v. Michael Murray et al:* Prepared plaintiff's expert analysis and testified at deposition re: non-performing commercial real estate mortgage work-out strategy and loss recognition. Case settled prior to trial.

*American Enterprise Bank v. Hartford Insurance:* Prepared defendant's expert testimony re: commercial bank loan underwriting regarding loan collateral. Case settled prior to trial.

*Rezner v. UNICREDIT BANK AG:* Prepared defendant's expert report re: availability, underwriting, and pricing for stock margin loans. Case settled prior to deposition.

*United States of America v. Michael T. Sahlbach:* Prepared defendant's analysis and documentation re: third-party credit card collections pricing and standard of care. Case settled prior to deposition.

*Chopra v. Arterburn and the Arterburn Trust:* Prepared plaintiffs' analysis of loan underwriting re: commercial real estate loan participations. Case settled prior to deposition.

*FDIC, as Receiver for Security Savings Bank, v. Kelly Jones, et al:* Prepared plaintiffs' commercial real estate loan reunderwriting and testified at deposition re: grossly negligent ADC loan approvals and unacceptable commercial real estate risk concentrations. Case settled prior to trial. Case No. 2:13-cv-00168-JAD-GWF, United States District Court, District of Nevada

*Confidential Banking Practices Litigation:* Provided consulting for government agency re: bank regulatory capital, Basel II compliance, and balance sheet restructuring.

*Fields v. Bank New York Mellon:* Prepared defendant's expert analysis re: residential mortgage loan securitization. Case dismissed prior to deposition.

*Auto Alert v. Dealer Socket:* Conducted expert analysis and prepared declarations re: auto lending terminology and loan approval practices to support defendants' claims in an automated technology patent dispute. Case settled in favor of defendant.



**CONSULTING ENGAGEMENTS – Continued**

*Magnate Fund #2 v. C.W. Gus Triggas*: Prepared defendants' expert analysis and testified at deposition re: industry standard of care for brokered loan applications and underwriting. Case settled prior to trial. No. C11-00781, Superior Court of the State of California, County of Contra Costa

*JPMorgan Chase v. Shafazand:* Prepared plaintiffs' expert analysis and testified at trial re: industry standard residential mortgage lending practices and loan documentation standards. Case settled in favor of plaintiff. No. 109CV152637, Superior Court of the State of California, In and for the County of Santa Clara

*Capital One v. Forrest:* Prepared plaintiffs' expert analysis and testified at deposition re: loan underwriting and straw buyer mortgage fraud. Case settled prior to trial.

*Bear Stearns Mortgage Funding Trust AR-2 v. EMC Mortgage LLC:* Prepared expert rebuttal report and testified at deposition regarding loan underwriting and default factors re: plaintiffs' $300+ million repurchase demand. Case settled prior to trial. Civil Action No. 6861-VCL, In the Court of Chancery of the State of Delaware

*FDIC-R v. Core Logic Valuation Services*: Prepared expert reports and testified at deposition re: plaintiff's $98 million mortgage underwriting damage claim. Case settled prior to trial. No. SACV11-704 DOC, United States District Court, Central District of California

*FDIC-R v. LSI*: Prepared expert reports and testified at deposition re: plaintiffs' $129 million mortgage underwriting damage claim. Case settled prior to trial. No. SACV11 – 706 DOC

*Crowell v. Ritz Carlton*: Prepared defendant's expert report and testified at deposition re: estimates of plaintiffs' lost income. Trial settled in favor of defendant with no damages awarded plaintiff. Civil No. 2012-5, District Court of the Virgin Islands, Division of St. Thomas / St. John

# TEACHING RESPONSIBILITIES

***Cal State University East Bay        2012 – Present***

Accounting and Finance Adjunct Faculty
- Teach undergraduate and MBA Finance and Real Estate courses
- Advisor in the academic Honors program
- Selected as Charlene Abendroth "Instructor of the Year" in 2013
- Co-founder of the Center for Financial Literacy

***Wells Fargo***

- Directed on-line and classroom consumer credit training



*Citicorp*

- Part-time faculty member of the Citicorp Executive Development Center, responsible for credit curriculum development and classroom training, including lectures, case studies, and computer simulations. Taught unsecured and real estate collections management.

## MAJOR BUSINESS ACCOMPLISHMENTS

- **Due Diligence** – Integration of Wachovia Bank $120 billion residential mortgage portfolio with successful loss mitigation programs including loan modifications, short sales, and principal reduction, generating a $2.4B impairment reserve release. Expert in purchase credit impaired accounting and loss mitigation programs such as HAMP.  Expert in loan level and portfolio credit and collections reviews.

- **Risk Management** – Expert in all phases of the credit lending cycle, including underwriting, account management, and collections / risk mitigation.

- **Allowance for Loan Loss Reserves** – Managed total Wells Fargo consumer and commercial loan portfolios ALLL through loan policies, analytics, and detailed quarterly loan level portfolio reviews. Integrated loss recognition policies into allowance calculations.

- **Stress Testing** – Federal Reserve approval for three credit quality and capital management plans

- **Business Management** – Managed home equity and mortgage lending business units. Ran appraisal and collections operations. Managed vendor relationships including credit bureaus and mortgage insurance companies.

- **Loan Underwriting** – credit analysis, appraisals, compliance, and loan documentation for both commercial and consumer prime and non-prime loans.

## PROFESSIONAL EXPERIENCE

WELLS FARGO, San Francisco, CA          1998 - 2012
**Executive Vice President and Senior Credit Officer**   (2008 – 2012)
Senior credit risk executive responsible for a $400B portfolio including mortgage, auto, credit card, student loan, and small business loans.  Member of key executive committees, including Sarbanes-Oxley Disclosure, Fair and Responsible Lending, Corporate Credit Policy, Loan Repurchase Reserves, and Allowance Approach.

- Directed 2008 Wachovia Bank residential mortgage due diligence and business integration including establishing a $30B credit impairment reserve and a $13B equity capital raise.
- Directed loss mitigation for Wachovia mortgage portfolio, including loan modifications. Established senior mortgage business management loan review process to vet most effective loss mitigation strategies. Developed "hands on" knowledge of distressed borrowers and local mortgage market conditions. Managed MSA-level market statistical model for optimal loss mitigation strategies, including loan modification versus foreclosure.
- Managed vendor relations with national Credit Reporting Agencies and mortgage insurance companies.
- $20 million delegated residential real estate underwriting authority. $350 million commercial credit loan authority.



- Managed credit forecasting and analysis for 2009 Federal Reserve SCAP and subsequent CCAR stress tests. All Wells Fargo capital plans approved by regulators.
- Maintained extensive support for rating agency, stock analyst, and regulator interface.

**Senior Credit Officer** – Corporate Credit   (1998 – 2007)

SCO responsible for establishing and monitoring corporate consumer credit policies and loan portfolio performance:

- Managed Wells Fargo corporate Allowance for Loan Losses ($5.5B at YE 2007), including quarterly adequacy testing and documentation. Worked closely with Loan Review to monitor loan quality and conducted quarterly portfolio reviews of impaired wholesale loans. Received satisfactory annual audit and SOX 404 exam ratings.
- Managed corporate credit reporting for senior management and the Wells Fargo Board of Directors, including portfolio concentration and peer analysis. Prepared and presented targeted studies on selected mortgage issues including strategic default, REO value maximization, and subprime mortgage lending.
- Chaired Retail Basel II working committee responsible for risk framework, data integrity, and model development and validation

## OTHER SIGNIFICANT EXPERIENCE

EUREKA BANK, FSB, Foster City, CA
**Senior Vice President and Residential Mortgage Director**
- Built and ran an innovative jumbo mortgage business with $2 billion annual loan fundings and a #1 market share in northern California. Managed all sales and credit functions.

BANK OF AMERICA, San Francisco, CA
**Senior Vice President – BofA Mortgage**
- Directed national lending policies and product development for a major national mortgage company, including the "Neighborhood Advantage" program for low income and first time home owners

CITIBANK (CA), Oakland, CA
**Senior Vice President – Mortgage Operations**
- Built a second mortgage lending operation for Citibank (CA) with a 2% return on assets and a #3 market share in northern California
- Managed two first mortgage underwriting centers with 500 team members, funding $2 billion per year. HMDA reporting and appraisal management.

CITIBANK (NYS), Rochester, NY
**Vice President**
- Credit Director responsible for credit policy and consumer collections, including mortgages, in a $10B portfolio
- Senior financial officer responsible for annual budgets, monthly financial reporting, and consolidation of bank subsidiary into Citicorp reporting



XEROX, Rochester, NY
**Financial Analysis Manager**

## PUBLICATIONS

 "<u>Selected Problems in Finance</u>" Cal State University East Bay, Neil Librock editor, ISBN 978-1-269-06446-0

"<u>Managing a Consumer Lending Business</u>", David Lawrence and Arlene Solomon. Chapter 10, "The Home Mortgage Business" authored by Neil Librock. ISBN 978-0-9715737-3-0

"Subprime Consumer Lenders Will Learn Their Lessons the Hard Way", American Banker, March 5, 2015

"Ask the Experts – Credit Cards for No Credit", Wallet Hub, August 2019

"Implementing a Center for Financial Literacy", with Micah Frankel, Pei-Hui Hsu, and David Murray, the Journal of International Finance Studies, Volume 18, Issue 1, p.21-32, March 2018

## ACTIVITIES

- University of Rochester Simon Graduate School of Business – Executive Advisory Council
- Porsche Club of America, San Francisco Golden Gate Region – Chief Driving Instructor

# Exhibit B

## EXPERT'S COMPENSATION REPORT

Neil M. Librock, as a Berkeley Research Group Managing Director has accrued compensation of approximately $13,950 for work on this matter through Friday July 10, 2020. The compensation is based on 27.9 hours of billable time at a rate of $500 / hour.

The expert expects to accrue additional billable time for deposition and a possible rebuttal report or trial.

# Exhibit C

**Materials Considered**

Legal Documents

- SALVADORA ORTIZ and THOMAS SCOTT, on behalf of themselves and all other similarly situated, Plaintiffs v. AMERICAN AIRLINES INC., THE AMERICAN AIRLINES PENSION ASSET ADMINISTRATION COMMITTEE, and AMERICAN AIRLINES FEDERAL CREDIT UNION, Defendants. Case 3:16-cv-00380-K, United States District Court for the Northern District of Texas.
- Declaration of Jack DeWitt in Support of Plaintiffs' Motion for Class Certification, Case 4:16-cv-00151-A. Filed 4/23/18.

Defendant Records

- Super Saver Retirement Plan IRS Form 5500 "Annual Return / Review of Employee Benefit Plan" filings for years 2009 – 2014 and 2016-17.
- AAFCU Annual Reports for the years 2009 – 2017.
- AAFCU Board of Directors Meeting Minutes:
  - December 2017       Bates AAFCU008054 – 8100
  - January 2017        Bates AAFCU007399 – 7440
  - January 2016        Bates AAFCU006715 – 6756
  - January 2015        Bates AAFCU005950 – 6022
  - January 2014        Bates AAFCU004960 – 5044
  - February 2013       Bates AAFCU004033 – 4088
  - January 2012        Bates AAFCU003160 – 3222
  - January 2011        Bates AAFCU002349 - 2425

Plaintiff Records

- Thomas Scott Super Saver 401(k) Plan Statements 2010-11. Bates AA-Ortiz_Lit0000149 – 165
- Thomas Scott 2010 and 2011 Plan Statements, unnumbered
- Salvadora P. Ortiz Super Saver 401(k) Plan Statements 2010, 2011, 2012, and 2015. Bates AA-Ortiz_Lit0000088 – 116
- Salvadora P. Ortiz Super Saver 401(k) Plan Statements 2013 and 2014. Bates AA-Lit0000124 - 139

# Exhibit 1

**AA Credit Union Calculations**

| | | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Member Deposits ($ thousand) | $ | 4,425,000 | $ 4,639,000 | $ 5,343,000 | $ 5,072,000 | $ 4,947,676 | $ 4,987,714 | $ 5,299,000 | $ 5,725,125 | $ 5,961,482 | $ 6,553,469 | |
| AA Plan Deposits ($ thousand) | $ | 1,266,000 | $ 1,255,000 | $ 1,695,000 | $ 1,259,896 | $ 1,145,443 | $ 1,059,795 | $ 1,180,549 | $ 1,290,195 | $ 1,067,725 | $ 1,033,031 | |
| Plan % of Deposits | | 28.6% | 27.1% | 31.7% | 24.8% | 23.2% | 21.2% | 22.3% | 22.5% | 17.9% | 15.8% | |

| | | | | | | | | | | | Average Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AA Fund Rate - 12 month | | 1.01% | 0.83% | 0.51% | 0.24% | 0.24% | 0.11% | 0.50% | 0.9375% | 1.10% | 0.004963889 |
| Interest paid on Member Accounts ($ thousand) | $ | 66,801 | $ 64,895 | $ 51,744 | $ 46,917 | $ 48,730 | $ 49,042 | $ 62,206 | $ 80,359 | $ 109,576 | |
| | | | | | | | | | | | |
| Interest paid on all Member deposits - % | | 1.44% | 1.21% | 1.02% | 0.95% | 0.98% | 0.93% | 1.09% | 1.35% | 1.67% | |
| | | | | | | | | | | | |
| Approx int paid to AA Plan ($thousand) | $ | 12,731 | $ 12,243 | $ 7,535 | $ 2,886 | $ 2,646 | $ 1,232 | $ 6,177 | $ 11,053 | $ 11,554 | |
| | | | | | | | | | | | |
| % Int paid to Plan as % of total Int paid | | 19.1% | 18.9% | 14.6% | 6.2% | 5.4% | 2.5% | 9.9% | 13.8% | 10.5% | |
| Interest if Plan has received aproportionate share | $ | 18,072 | $ 20,587 | $ 12,853 | $ 10,862 | $ 10,354 | $ 10,926 | $ 14,019 | $ 14,393 | $ 17,273 | |
| | | | | | | | | | | | |
| Annual Damages ($ thousands) | $ | 5,341 | $ 8,345 | $ 5,318 | $ 7,975 | $ 7,708 | $ 9,694 | $ 7,842 | $ 3,340 | $ 5,718 | $ 61,281 |

**Total Damages 2010 - 2015 ($ thousands)**

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Note: effective interest rate on Member Accounts Excluding Fund Accounts | | 1.60% | 1.44% | 1.16% | 1.16% | 1.17% | 1.16% | 1.26% | 1.42% | 1.78% | |

**ALTERNATIVE DAMAGE CALCULATION BASED ON RATES**
**RATES FOR IRAs AND REGULAR SHARES**

| | | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Interest Rate Credited on Regular Shares and IRAs | | | | | 0.005 | 0.005 | 0.005 | 0.008 | 1.1875% | 1.35% | |
| Interest Rate Credited on Plan Deposits | | | | | 0.0025 | 0.0025 | 0.0025 | 0.005 | 0.9375% | 1.10% | |
| Interest on Plan Accounts at Regular Share/IRA Rate | | | | $ | 6,013 | $ 5,513 | $ 5,601 | $ 9,883 | $ 14,000 | $ 14,180 | |
| Annual Damages ($ thousands) | | | | $ | 3,127 | $ 2,867 | $ 4,369 | $ 3,706 | $ 2,947 | $ 2,626 | $ 19,642 |

APPX34

# Exhibit 2

Ortiz and Scott investment in AAFCU

**Tom Scott**

| Balance | | Date | Contributions | | Actual earnings | Earnings at the AAFCU Average Rate | | Loss | |
|---|---|---|---|---|---|---|---|---|---|
| $ | 368,590.72 | 1/1/2010 - 1/11/2010 | $ | 377.00 | 110.84 | $ | 177.73 | $ | 66.89 |
| $ | 200,790.79 | 10/19/2010 - 12/31/2010 | $ | 968.28 | 406.18 | $ | 644.08 | $ | 237.90 |
| | 2011 | | | | | | | | |
| $ | 202,165.25 | 1/1/2011 - 10/21-2011 | | 4161.58 | 1402.74 | $ | 2,941.14 | $ | 1,538.40 |
| | | | | | | Aggregate Loss | | $ | 1,843.19 |

Mr. Scott had no investment in CU Option in 2013, 2014 and 2015 except $55.08, which resulted from a reallocation or srvice credits and not an intentional investment.

**Salvadora Ortiz**

| Balance | | Date | Contributions | | Actual earnings | | Earnings at the AAFCU Average Rate | | Loss | |
|---|---|---|---|---|---|---|---|---|---|---|
| $ | 16,858.82 | 1/1/2010 - 12/31/2010 | $ | 3,755.52 | $ | 187.41 | $ | 299.79 | $ | 112.38 |
| $ | 20,801.75 | 1/1/2011 - 12/31/2011 | | 1643.06 | | 183.09 | $ | 311.38 | $ | 128.29 |
| $ | 22,627.90 | 1/1/2012 - 12/31/2012 | | 0 | | 114.33 | $ | 262.48 | $ | 148.15 |
| $ | 22,742.23 | 1/1/2013 - 12/31/2013 | | 0 | $ | 56.85 | $ | 263.81 | $ | 206.96 |
| $ | 22,799.08 | 1/1/2014 - 12/31/2014 | | 0 | | 57.01 | $ | 266.75 | $ | 209.74 |
| $ | 22,856.09 | 1/1/2015 - 12/31/2015 | | 0 | | 27.18 | $ | 265.13 | $ | 237.95 |
| $ | 22,883.27 | 1/1/2016 - 8/5/2016 | | 0 | | 98.51 | $ | 171.42 | $ | 72.91 |
| | | | | | | | Aggregate Loss | | $ | 1,116.37 |