# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **SALVADORA ORTIZ AND** | § | |
| **THOMAS SCOTT,** | § | |
|     *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:16-cv-00151-A** |
| **AMERICAN AIRLINES, INC., THE** | § | |
| **AMERICAN AIRLINES PENSION** | § | |
| **ASSET ADMINISTRATION** | § | |
| **COMMITTEE, AND AMERICAN** | § | |
| **AIRLINES FEDERAL CREDIT UNION,** | § | |
|     *Defendants* | § | |

## DEFENDANT AMERICAN AIRLINES FEDERAL CREDIT UNION'S
## REPLY IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT

Jonathan D. Neerman, Lead Counsel
Texas Bar No. 24037165
Edwin Buffmire
Texas Bar No. 24078283
Brian H. Oates
Texas Bar No. 24088144
**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-5664 (Direct Dial)
(214) 661-6899 (Direct Fax)

**ATTORNEYS FOR DEFENDANT
AMERICAN AIRLINES FEDERAL
CREDIT UNION**

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES..........................................................................................ii

I.     SUMMARY OF ARGUMENT ......................................................................1

II.    ARGUMENT ..................................................................................................3

    A.    The Credit Union is Entitled to Summary Judgment Because Plaintiffs Have Failed to Trace Their Alleged Injury to the Credit Union's Alleged Misconduct and, Therefore, Have No Standing ..........................3

    B.    The Credit Union is Entitled to Summary Judgment Because Plaintiffs Have Failed to Establish that the Credit Union is a Plan Fiduciary ..............................................................................................5

        1.    Plaintiffs' allegations in the Complaint do not support a finding that the Credit Union is a Plan fiduciary ............................................................................5

        2.    Plaintiffs' new allegations in the Response do not support a finding that the Credit Union is a Plan fiduciary ............................................................................8

    C.    The Credit Union is Entitled to Summary Judgment Because Plaintiffs Have Failed to Evidence a Prohibited Transaction By the Credit Union....................................................................................14

    D.    The Credit Union is Entitled to Summary Judgment Because Plaintiffs' Proffered Damages Model is not Consistent with its Theory of Liability Against the Credit Union........................................16

III.    CONCLUSION AND PRAYER ...................................................................17

# INDEX OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*,
  125 F.3d 715 (9th Cir. 1997) ....................................................................................................7

*Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*,
  96 F.3d 1310 (9th Cir. 1996) .............................................................................................11, 12

*Carroll L. Wood, III, D.D.S. v. CNA Ins. Cos.*,
  837 F.2d 1402 (5th Cir. 1988) ..................................................................................................7

*Charters v. John Hancock Life Ins. Co.*,
  583 F.Supp.2d 189 (D. Mass. 2008) ......................................................................................11

*Chicago Bd. Options Exch. Inc. v. Connecticut Gen. Life Ins. Co.*,
  713 F.2d 254 (7th Cir. 1983) ..................................................................................................11

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)...................................................................................................................16

*Cutaiar v. Marshall*,
  590 F.2d 523 (3d Cir. 1979).....................................................................................................15

*Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*,
  805 F.2d 732 (7th Cir. 1986) ..................................................................................................11

*F.H. Krear & Co. v. Nineteen Named Trustees*,
  810 F.2d 1250 (2d Cir. 1987)...................................................................................................13

*Golden Star, Inc. v. Mass. Mut. Life Ins. Co.*,
  22 F.Supp.3d 72 (D. Mass. 2014) ...........................................................................................13

*IT Corp. v. General Am. Life Ins. Co.*,
  107 F.3d 1415 (9th Cir. 1997) ................................................................................................11

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*,
  510 U.S. 86 (1993)...................................................................................................................15

*Landry v. Air Line Pilots Ass'n Inter. AFL-CIO*,
  901 F.2d 404 (5th Cir. 1990) ....................................................................................................8

*Lowen v. Tower Asset Management*,
  829 F.2d 1209 (2d Cir. 1987)...................................................................................15

*Ludlow v. B.P.R.L.C.*,
  800 F.3 674, 686 (5th Cir. 2015) .............................................................................16

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)....................................................................................................3

*McLemore v. Regions Bank*,
  682 F.3d 414 (6th Cir. 2012) .....................................................................................7

*In re Mushroom Transp. Co.*,
  382 F.3d 325 (3d Cir. 2004).......................................................................................7

*Nagy v. DeWese*,
  771 F.Supp.2d 502 (E.D. Pa. 2011) ..........................................................................7

*O'Toole v. Arlington Trust Co.*,
  681 F.2d 94 (1st Cir. 1982)......................................................................................7, 8

*Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*,
  722 F.3d 861 (6th Cir. 2013) ...................................................................................13

*Reichling v. Continental Bank*,
  813 F.Supp. 197 (E.D.N.Y. 1993) .....................................................................7, 8, 10

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)..............................................................................................3,4

*Srein v. Frankford Trust Co.*,
  323 F.3d 214 (3d Cir. 2003)........................................................................................7

*Tex. Commerce Bank-Hurst, N.A. v. United States*,
  703 F.Supp. 592 (N.D. Tex 1988) ............................................................................10

*Tittle v. Enron Corp.*,
  284 F.Supp.2d 511 (S.D. Tex. 2003) ......................................................................6, 7

**State Cases**

*Brigham v. McCabe*,
  27 A.D.2d 100, 276 N.Y.S.2d 328 (3d Dep't 1966), *aff'd*, 55 Misc. 2d 565,
  285 N.Y.S.2d 327 (Ct. App. 1967) .........................................................................9, 10

*Matter of Holden*,
    264 N.Y. 215, 190 N.E. 413 (1934) ........................................................................9

*La Sara Grain Co. v. First Nat. Bank of Mercedes*,
    673 S.W.2d 558 (Tex. 1984) ...............................................................................10

*Sears v. Continental Bank and Trust Co.*,
    562 S.W.2d 843 (Tex. 1977) ..................................................................................9

**Federal Statutes**

29 U.S.C. § 1106 ..........................................................................................................2

29 U.S.C. §  1108 .........................................................................................................6

29 U.S.C. § 1002(21)(A)(i) ...........................................................................................8

**State Statutes**

Tex. Prop. Code Ann. § 73.001 ....................................................................................10

**Rules**

Federal Rule of Civil Procedure 23 ...............................................................................1

Federal Rule of Civil Procedure 56 .............................................................................14

**Regulations**

12 CFR § 204.2(b) .........................................................................................................9

**Other Authorities**

9 NY Jur.2d, Banks, § 238 ............................................................................................10

**DEFENDANT AMERICAN AIRLINES FEDERAL CREDIT UNION'S**
**REPLY IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT**

TO THE HONORABLE COURT, ALL INTERESTED PARTIES, AND THE ATTORNEYS OF
RECORD:

Defendant American Airlines Federal Credit Union ("AAFCU") or (the "Credit Union")

files this Reply in Support of its Motion for Final Summary Judgment[1] pursuant to Federal Rule of

Civil Procedure 56 with respect to Count II in the Complaint (Doc. 1) of Plaintiffs Salvador Ortiz

("Ortiz") and Thomas Scott ("Scott") (collectively, "Plaintiffs"), and respectfully shows the Court,

as follows:

## I.      SUMMARY OF ARGUMENT

More than four years after filing this lawsuit, Plaintiffs' case against the Credit Union

remains a patchwork of conflicting theories held together by a fundamental misunderstanding of

the credit union industry.  Perhaps most egregious is Plaintiffs' competing damages theories

against the Credit Union and the American Airlines Defendants.  The Credit Union presented to

the Court unrebutted evidence that dismantles Plaintiffs' allegations in their Complaint.  Plaintiffs'

Response[2] accomplishes nothing more than undermining their already wobbly theories of liability

and damages against the Credit Union.  Instead of rebutting the Credit Union's evidence, Plaintiffs

responded by pleading new allegations that do not appear in the Complaint, relying on a damages

model that does not trace back to their theory of liability, and failing to identify any evidence that

---

[1] (Credit Union's Motion and Brief in Support of its Motion for Final Summary Judgment (Docs.
180 and 181) (hereafter, collectively the "Motion".)

[2] (Plaintiffs Opp. to Def. American Airlines Federal Credit Union's Motion for Summary
Judgment and Memorandum in Support Thereof, Doc. 213) (hereafter, the "Response".)

creates an issue of fact that defeats summary judgment. The Credit Union respectfully requests that the Court grant summary judgment on Count II against the Credit Union for the following reasons.

*First*, Plaintiffs have not met their threshold burden of establishing Article III standing. Plaintiffs' alleged injury is neither concrete nor traceable to the alleged misconduct by the Credit Union. The uncontroverted evidence shows that the Credit Union (1) set a dividend rate every month for the Credit Union Option in advance of payment and (2) paid to Plan participants that agreed rate. There is no evidence that Plaintiffs did not receive the agreed dividend rate. Plaintiffs also fail to allege or explain how their sole alleged injury—receipt of unreasonably low dividend rates from the Credit Union Option—is traceable to the Credit Union's purported self-dealing. Consequently, Plaintiffs do not have standing to bring their claims against the Credit Union.

*Second*, the Credit Union is not a Plan fiduciary for the purposes alleged in the Complaint or for the purpose of the new theories advanced in Plaintiffs' Response. The mere holding of Plan assets by the Credit Union does not transform it into a Plan fiduciary. The Plan assets on deposit at the Credit Union remain, at all times, under the control of the Plan. The Credit Union's investment of amounts deposited by the Plan is not a fiduciary function, nor is the setting of divided rates for the Credit Union Option. Plaintiffs' failure to establish the Credit Union's fiduciary status is fatal to Count II in the Complaint.

*Third*, the Credit Union did not deal in Plan assets for its own interest or its own account in violation of 29 U.S.C. § 1106 (b)(1). The Credit Union held Plan assets as a liability on its balance sheet and invested the deposits in conservative interest bearing assets. These investments

ensured that amounts deposited by the Plan were payable to the Plan on demand, while also generating income to pay a reasonable dividend rate to Plan participants.  The Credit Union did not pay itself compensation out of Plan assets.  Therefore, even if the Credit Union was a fiduciary, which it is not, it did not violate ERISA's self-dealing prohibition.

**Fourth**, Plaintiffs have presented no evidence that they or other Plan participants suffered damages as result of the Credit Union's conduct.  Plaintiffs' expert concedes that he will not render any opinions regarding the Credit Union's alleged self-dealing.  Plaintiffs' expert also did not prepare a damages calculation that relates to the Credit Union's alleged misconduct.  Plaintiffs' failure to present a damages model that is consistent with their theory of liability entitles the Credit Union to summary judgment.

## II.    <u>ARGUMENT</u>

### A.    The Credit Union is Entitled to Summary Judgment Because Plaintiffs Have Failed to Trace Their Alleged Injury to the Credit Union's Alleged Misconduct And, Therefore, Have No Standing.

Plaintiffs claim they have standing to bring their own claim against the Credit Union because they, and other Plan participants, would have received greater returns had the Credit Union paid a reasonable interest rate on those assets.  (Response, Doc. 213 at 10.)  Plaintiffs have never explained, however, how they trace the Credit Union's alleged self-dealing to their alleged injury. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). (internal quotation marks omitted) (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 9 L. Ed. 2d 351 (1992)).  For an

injury to be particularized, it must "affect the plaintiff in a personal and individual way." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1, (1992). A "concrete" injury is one that actually exists and is "real," not "abstract." *Spokeo*, 136 S.Ct. at 1548.  A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. at 1549.

Plaintiffs fail in their Response to bridge the gap between their theory of liability against the Credit Union and their alleged injury in fact.  Even if Plaintiffs could present evidence that the Credit Union is a fiduciary and engaged in self-dealing, Plaintiffs have wholly failed to explain how that misconduct affected the dividend rates paid to the Plan participants.  (Response, Doc. 213 at 9-13.)  The reverse is also true.  If the Court determines that Plaintiffs suffered an injury because the Credit Union Option divided rate was unreasonably low, Plaintiffs have still not alleged any facts tracing their injury back to the Credit Union's alleged self-dealing.  Plaintiffs ask the Court to assume without any factual or legal support that (1) the Credit Union's alleged misconduct caused lower dividend rates for Plan participants, and (2) Plaintiffs would have received higher dividends had the Credit Union not engaged in self-dealing.

Plaintiffs' expert Neil Librock is of no help to Plaintiffs.[3]  His opinion and testimony only underscore the hole in Plaintiffs' theory.  Mr. Librock did not perform damages calculations that supports Plaintiffs' self-dealing claim, nor will he offer any opinions on that topic.  (Librock

---

[3] Plaintiffs did not designate Mr. Librock as an expert until July 6, 2020.  Defendants did not depose Mr. Librock until July 15, 2020.  Neither Mr. Librock's report nor his deposition testimony was available at the time the Credit Union filed the Motion.  The Credit Union includes in its Appendix excerpts of Mr. Librock's testimony (Ex. 3) because Plaintiffs rely on his report in their Response.

Report, Doc. 203; Deposition of Neil Librock taken on July 15, 2020 ("Librock Depo." 54:17-55:1; 55:24-56:16, 56:23-57:1, App. AAFCU 17-20.)

Plaintiffs have offered no evidence to show they suffered an inury resulting from the Credit Union's conduct. The unrebutted evidence shows that the Credit Union paid dividends to Plaintiffs and other Plan participants in the Credit Union Option every month during the relevant period. (Motion, Doc. 181 at 7.) Furthermore, the Credit Union disclosed in advance to the Plan fiduciaries the dividend rate to be paid to participants in the Credit Union Option. (*Id*.) Plaintiffs fail to allege or cite to evidence that the Credit Union failed to redeem Plan assets upon demand, failed to insure amounts deposited by the Plan, or failed to account for Plan assets as a liability on its balance sheet. In short, Plaintiffs and Plan participants have suffered no injury because of the Credit Union's conduct.

Plaintiffs' failure to identify a concrete injury that is fairly traceable to the Credit Union's challenged behavior defeats its sole claim against the Credit Union.

**B.   The Credit Union is Entitled to Summary Judgment Because Plaintiffs Have Failed to Establish that the Credit Union is a Plan Fiduciary.**

   **1.   Plaintiffs' allegations in the Complaint do not support a finding that the Credit Union is a Plan fiduciary.**

Plaintiffs' Complaint contains a single passing reference to the Credit Union's fiduciary status:

> At all relevant times, [the Credit Union] was a federally chartered credit union that held assets of the Plan in demand deposit accounts pursuant to the terms of ERISA § 408(b)(4).

(Doc. 1 at ¶9.) Plaintiffs do not allege any other basis for the Credit Union's alleged fiduciary status for the Plan. This allegation in the Complaint, which does not even track the statutory

language in ERISA, is insufficient to confer functional fiduciary status on the Credit Union.  The Court should issue summary judgment in the Credit Union's favor for two reasons.

**First**, Plaintiffs' reliance on the prohibited exemption contained in ERISA section 408(b)(4) is misplaced because it presumes that the Credit Union is a fiduciary.  A careful reading of the exemption makes clear that not every financial institution that holds ERISA plan assets is a fiduciary:

> The prohibitions provided in [ERISA § 406] of this title shall not apply to any of the following transactions:
>
> * * * * *
>
> The investment of all or part of a plan's assets in deposits which bear a reasonable interest rate in a bank or similar financial institution supervised by the United States or a State, *if such bank or other institution is a fiduciary of such plan* and if—
>
> (A)   the plan covers only employees of such bank or other institution and employees of affiliates of such bank or other institution, or
>
> (B)   such investment is expressly authorized by a provision of the plan or by a fiduciary (other than such bank or institution or affiliate thereof) who is expressly empowered by the plan to so instruct the trustee with respect to such investment.

29 U.S.C. § 1108 (emphasis added).  There is no need for the Credit Union to rely on this exemption because it is not a Plan fiduciary.  (Motion, Doc. 181 at 14-17.)  Plaintiffs have failed to identify any evidence supporting their allegation that the Credit Union held Plan assets in reliance on this exemption.  (Response, Doc. 213 at 14.)  Plaintiffs' attempt to confer fiduciary status using this exemption requires improper circular reasoning that the facts before the Court do not support.

**Second**, the Credit Union is not a fiduciary simply because it holds Plan assets as deposits.

> Even where a person exercises some control over the plan's operations or assets, if he is providing only traditional professional

> services to the plan, he is not a 'fiduciary' for such services and is not subject to an ERISA suit for breach of fiduciary duties.  An attorney rendering legal and consulting advice to a plan will not be considered to be a fiduciary unless he exercises authority over the plan in a manner other than by usual professional functions. . . . The same is true for providers of other professional services, including accountants and banks.

*Tittle v. Enron Corp.*, 284 F.Supp.2d 511, 570 (S.D. Tex. 2003) (internal citations, quotation marks, and alteration marks omitted).  *See also*, *Carroll L. Wood, III, D.D.S. v. CNA Ins. Cos.*, 837 F.2d 1402 (5th Cir. 1988) (holding that financial institution was not a fiduciary where it had issued certificates of deposit to the administrator of an ERISA plan in exchange for plan assets).

Courts in other circuits agree that the receipt of deposits and holding of funds consisting of plan assets do not transform a financial institution into an ERISA fiduciary.  *See, e.g. McLemore v. Regions Bank*, 682 F.3d 414, 423-24 (6th Cir. 2012) (custodial bank's withdrawal of fees from ERISA plan accounts did not give rise to fiduciary duty); *Nagy v. DeWese*, 771 F.Supp.2d 502, 513 (E.D. Pa. 2011) ("[M]ere custody or possession of plan assets, such as when a bank 'does no more than receive deposits from a benefit fund on which the fund can draw checks,' does not constitute an exercise of 'authority or control' or confer fiduciary status.") (*quoting In re Mushroom Transp. Co.*, 382 F.3d 325, 346-47 (3d Cir. 2004)); *Srein v. Frankford Trust Co.*, 323 F.3d 214, 222 (3d Cir. 2003) (recognizing that entities are not ERISA fiduciaries when they do "no more than receive deposits from a benefit fund on which the fund can draw checks") (citation and quotation marks omitted); *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 721-22 (9th Cir. 1997) (no fiduciary duty owed by custodial bank); *Reichling v. Continental Bank*, 813 F.Supp. 197, 198 (E.D.N.Y. 1993) ("Every court that has examined the question of

whether a bank can be an ERISA fiduciary based on the bank's activities as a mere depository or lender to a trust fund has determined that the bank's lack of discretion in these activities precludes it from being deemed a fiduciary.") (discussing as an example *O'Toole v. Arlington Trust Co*., 681 F.2d 94 (1st Cir. 1982)).

For these reasons and for the reasons stated in its Motion, the Credit Union respectfully requests that the Court enter summary judgment on the basis that it is not a Plan fiduciary for the reasons alleged in the Complaint.

### 2. Plaintiffs' new allegations in the Response do not support a finding that the Credit Union is a Plan fiduciary.

Acknowledging their failure to plead properly the basis for the Credit Union's fiduciary status, Plaintiffs now belatedly allege in their Response that the Credit Union is a fiduciary because it holds Plan assets and "exercises discretionary control over [Plan] assets." (Response, Doc. 213 at 4, 13, 14, and 15.) Plaintiffs' imprecise verbiage conflates two separate sections of 29 U.S.C. § 1002(21)(A)(i). The Credit Union is still not a fiduciary for the purposes now alleged by Plaintiffs, and, therefore, summary judgment is still proper.

"Fiduciary status is to be determined by looking at the actual authority or power demonstrated, as well as the formal title and duties of the parties at issue [emphasis in original]." *Landry v. Air Line Pilots Ass'n Inter. AFL-CIO*, 901 F.2d 404, 418 (5th Cir. 1990), *cert. denied*, 498 U.S. 895 (1990). Here, Plaintiffs make three specific factual allegations in support of their new theory that the Credit Union controlled Plan assets, all of which relate to the Credit Union's

setting of dividend rates for the Credit Union Option:[4]

> The Plan and its participants had no option but to accept the rates set by the Credit Union;
>
> The Credit Union had the ability to set the rates on funds already on deposit in the Credit Union Option; and,
>
> The Credit Union had the unilateral discretion to determine what earnings to credit the Plan participants and what earnings to keep itself.

(Response, Doc. 213 at 16-17.)   Each of these factual allegations is unsupported by the uncontroverted evidence.

*First*, the Credit Union did not "control" Plan assets.  Plaintiffs have a fundamental misunderstanding of how the Credit Union treated assets the Plan deposited through the Credit Union Option.  The Credit Union holds assets of the Plan on its balance sheet as liabilities.  (Credit Union Financial Statements for 2010-2011, App. AAFCU 1-3; Deposition of Lewis Cohen from July 16, 2020 ("Cohen Depo.") at 24:7-17, App. AAFCU 7.)  The Plan and its fiduciaries, however, remain in control of the Plan assets deposited with the Credit Union.  The Credit Union holds these Plan assets as "demand" deposits that are payable on demand back to the Plan.  12 CFR § 204.2(b). The Plan, as the result of a decision by the Plan's fiduciaries or by the decisions of individual participants, can withdraw either all or some of the Plan assets from the Credit Union to reallocate to other non-Credit Union investment options daily.  (Motion, Doc. 181 at 8.)

A debtor/creditor relationship exists between the depositor of funds and the financial

---

[4] Plaintiffs do not allege in the Response that the Credit Union is a fiduciary for the only misconduct alleged in the Complaint: the alleged lending and investment activity using Plan assets. This telling omission is further evidence that the Plaintiffs have abandoned their original claims.

institution into which the funds are deposited. *Sears v. Continental Bank and Trust Co.*, 562 S.W.2d 843 (Tex. 1977). The fact that the funds deposited are those from a fiduciary, does not change the debtor/creditor relationship between the depositor and the financial institution. *Matter of Holden*, 264 N.Y. 215, 217, 190 N.E. 413 (1934); *Brigham v. McCabe*, 27 A.D.2d 100, 276 N.Y.S.2d 328 (3d Dep't 1966), *aff'd*, 55 Misc.2d 565, 285 N.Y.S.2d 327 (Ct. App. 1967).[5] Although legal title to the funds passes to the bank upon deposit, the depositor has a right to direct the bank on how the funds should be disbursed. *La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558 (Tex. 1984). Since the depositor has a right to direct the disbursement of the funds, it is clear that the depositor has a right to the property. *Tex. Commerce Bank-Hurst, N.A. v. United States*, 703 F. Supp. 592, 594 (N.D. Tex. 1988). Furthermore, "the money deposited with the bank belongs to the bank and is not the property of the depositor. The property of the depositor is the indebtedness of the bank to it, a mere chose in action." *Reichling*, 813 F.Supp. at 198 (*quoting* 9 NY Jur.2d, Banks, § 238). This analysis is consistent with general principals of property law in Texas, which defines a "depositor" as "a person who has an ownership interest in an account." Tex. Prop. Code Ann. § 73.001.

*Second*, the Credit Union's setting of dividend rates was not a discretionary fiduciary function for the Plan. The Credit Union Board sets dividend rates for all accounts, including the Credit Union Option rate, on a monthly basis in advance of their implementation. (Motion, Doc. 181 at 7.) The Credit Union notifies the Plan in advance of the intended dividend rate for the

---

[5] These cases apply New York law, but the principles apply equally to the amounts deposited by the Plan at the Credit Union.

Credit Union Option.  (*Id*.)  The Plan fiduciaries are not obligated to accept the proposed rates. They can evaluate the proposed rate, object to the proposed rate, and, ultimately, withdraw all the Plan assets upon demand.  (*Id*. at 8.)  At all times relevant to this lawsuit, the Credit Union has paid the set dividend rate disclosed in advance to the Plan.  (*Id*. at 7.)  The Credit Union does not have the authority to make any changes to this arrangement with the Plan, and Plaintiffs have not presented evidence to the contrary.

The cases upon which Plaintiffs rely all deal with service providers who have the contractual right to amend unilaterally their contracts with an ERISA plan when managing all of the plans' assets.  (Response, Doc. 213 at 16-17.)  *See Ed Miniat, Inc. v. Globe Life Ins. Group, Inc*., 805 F.2d 732, 738 (7th Cir. 1986) (insurance company was an ERISA plan fiduciary because it amended terms of an annuity contract, which was an asset of the plan); *Chicago Bd. Options Exch. Inc. v. Connecticut Gen. Life Ins. Co*., 713 F.2d 254, 260 (7th Cir. 1983) (same).  The Seventh Circuit in these two cases concluded that this power to amend a contract with the plan was an exercise of discretion over the management of an ERISA plan.  (*Id*.)  *See also*, *Charters v. John Hancock Life Ins. Co.*, 583 F.Supp.2d 189, 199 (D. Mass. 2008) (plan entered into annuity contract with insurance company).  Here, the Credit Union is not managing Plan assets.  The Credit Union is merely holding Plan assets as deposits in return for a reasonable dividend rate.

Plaintiffs' reliance on *IT Corp. v. General Am. Life Ins. Co*., 107 F.3d 1415 (9th Cir. 1997) actually supports the Credit Union's position.  (Response, Doc. 213 at 13.)  There, the Ninth Circuit held that an insurance company became a fiduciary because it had discretionary control over a bank account holding an ERISA plan's assets.  *IT Corp*., 107 F.3d at 1421.  The Ninth Circuit

distinguished between actions taken by a fiduciary and a bank acting as a non-fiduciary:

> Authority over a plan's money is not the same thing as being a depository of the money. If the plan's money is deposited in a bank, that does not ipso facto make the bank a fiduciary. *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 96 F.3d 1310, 1317 (9th Cir. 1996). When money is deposited in a bank, generally the bank has no authority over who the money is paid to, and the bank manages its own money, not the depositor's, because the depositor loans its money to the bank for its own use. People with checking accounts do not worry that their banks will pay out their money to persons of the bank's choice, because the bank has no authority or control entitling it to pay anyone but payees and endorsees on checks. Unlike Citibank in *Arizona Carpenters*, General American had authority to write checks, that is, to dispose of plan assets.

*Id.* Like Citibank in *Arizona Carpenters*, there is no evidence that the Credit Union had the authority to dispose or transfer Plan assets outside of the Credit Union, thus reducing the Credit Union's indebtedness to the Plan. Therefore, the Credit Union, like Citibank, lacks authority over the Plan's assets.

**Third**, the Credit Union did not receive compensation, as Plaintiffs have alleged, from Plan assets.[6] The Credit Union presented unrebutted evidence in its Motion that the Credit Union receives no management fees for holding Plan assets. (Motion, Doc. 181 at 7.) Plaintiffs also do not dispute that the Credit Union does not use Plan assets to pay its own expenses, debts, commissions, or fees to itself. (*Id.*) Instead, Plaintiffs now argue that **net interest** from **amounts**

---

[6] Plaintiffs have no evidence supporting their new theory that the Credit Union retained net interest income from amounts deposited by the Plan as "compensation." They fail in their Response to cite any evidence showing the source or amount of this retained compensation. Neither of the two expert witnesses designated by Plaintiffs performed any sort of analysis that calculates this purported compensation. (Docs. 192 and 203.)

*deposited by the Plan* invested by the Credit Union constitutes discretionary compensation. (Response, Doc 213 at 6-7.)  Again, Plaintiffs misstate the difference between Plan assets and amounts deposited by the Plan.  The Credit Union invests amounts deposited by the Plan in cash and short-term securities to generate income to pay dividends to Plan participants.  (Motion, Doc. 181 at 8.)  The Plan assets, in the form of the deposit liability on the Credit Union's balance sheet, remains undisturbed.  (Credit Union Financial Statements for 2010-2011, App. AAFCU 1-3; Cohen Depo. at 24:7-17, App. AAFCU 7.)  The Credit Union maintains sufficient cash and short-term securities to return the entirety of the Plan assets back to the Plan on demand.  (Motion, Doc. 181 at 8.)  Therefore, any "compensation" retained by the Credit Union was the result of its investing deposits, not Plan assets.

Plaintiffs fail to identify any case law in which a Court has found interest income generated by a financial institution from ERISA plan assets held as deposits constitutes a "plan asset," as they have alleged here.  The cases upon which Plaintiffs rely all deal with situations where service providers had the contractual right to set their own management fee compensation directly from ERISA plan assets.  (Response, Doc. 213 at 17.)  *See, e.g, F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1254 (2d Cir. 1987) (benefit funds entered into three-year contract with fiduciary to provide "all administrative functions related to the collection of monies due to the [plan]"); *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 864 (6th Cir. 2013) (benefits plan entered into administrative services contract with health insurance company); *Golden Star, Inc. v. Mass. Mut. Life Ins. Co.*, 22 F.Supp.3d 72, 75 (D. Mass. 2014) (plan entered into group annuity contract with insurance company).  There is no evidence here that

the Credit Union had any contractual right to receive compensation from the Plan.  Therefore, the Credit Union could not have the unilateral discretion to alter its compensation, which is the basis for the courts' conference of fiduciary status on the service providers in the cases cited by Plaintiffs.

The Credit Union respectfully request summary judgment on Count II because Plaintiffs have failed to show that the Credit Union is a Plan fiduciary.

**C.     The Credit Union is Entitled to Summary Judgment Because Plaintiffs Have Failed to Evidence a Prohibited Transaction By the Credit Union.**

Plaintiffs allege in their Complaint that the Credit Union used Plan assets to "make loans to [its] members and to make other investments for which it earned substantial income, which in turn permitted [it] to offer substantially higher interest rates on similar demand deposit accounts."[7] (Doc. 1 at ¶47.)  The Credit Union presented in its Motion evidence that the Credit Union does not use Plan assets to make loans to its members.  (Motion, Doc. 181 at 19; Cohen Depo. at 37:12-15, App. AAFCU 8.)  Instead, the Credit Union invests amounts deposited by the Plan in cash and short-term securities.  (*Id*.)  The Credit Union also explained in its Motion that no court has held a financial institution liable for the breach of fiduciary duty based on similar facts alleged in the Complaint.  (*Id*. at 18.)

Plaintiffs responded by adding new allegations that do not appear in their Complaint, manufacturing factual disputes, and misapplying the law.  As an initial matter, the Court should disregard Plaintiffs' new allegations that the Credit Union used Plan assets as "operating" and

---

[7] There is no need for the Credit Union to go through this ERISA analysis because the Credit Union is not a Plan fiduciary.  In doing so, the Credit Union does not concede that it is a Plan fiduciary.

"working" capital.  (Response, Doc. 213 at 19 and 22.)  Plaintiffs have not rebutted the Credit Union's evidence that it does not use Plan assets or amounts deposited by the Plan to make loans to its members.  (Motion, Doc. 181 at 19.)[8]  Plaintiffs' abandonment of this theory means the only remaining issue is Plaintiffs' allegation that the Credit Union invested Plan assets to generate income.

There is no contradiction in the evidence presented by the Credit Union and Plaintiffs. Credit Union does not deny that it invests amounts deposited by the Plan in cash and short-term securities for the purpose of generating income.  (Motion, Doc. 181 at 7.)  The Credit Union uses this income first to pay dividends to the Plan.  (Cohen Depo. at 75:23-76:3, App. AAFCU 10-11.) The Credit Union uses net investment income generated from invested amounts deposited by the Plan as retained earnings for Net Worth calculations and to pay for Credit Union expenses.  (Cohen Depo. at 43:12-20, App. AAFCU 9.)  Meanwhile, the entirety of the Plan's assets at the Credit Union remain as a liability on the Credit Union's balance sheet.   (Credit Union Financial Statements for 2010-2011, App. AAFCU 1-3; Cohen Depo. at 24:7-17, App. AAFCU 7.)  Plaintiffs do not offer any other evidence in support of their argument, so there is no other possibility for contradiction.

Plaintiffs have failed to identify any legal authority for its argument that the Credit Union's investing of amounts deposited by the Plan for generating income is improper.  (Response, Doc. 213 at 19-22.)  Instead, Plaintiffs rely on cases that are factually different from this case.  *See, e.g.,*

---

[8] Plaintiffs offer no evidence or argument that the income generated by the Credit Union allowed it to offer higher dividend rates on other accounts.  (*See* Infra, Section II(A).)

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 89-90 (1993) (Supreme Court holding that a "guaranteed benefit policy" was a plan asset that subjects a service provider to fiduciary status); *Cutaiar v. Marshall*, 590 F.2d 523, 530 (3d Cir. 1979) (finding that a pension fund making a loan to related welfare fund was a prohibited transaction); *Lowen v. Tower Asset Management*, 829 F.2d 1209, 1214 (2d Cir. 1987) (finding that an investment manager's investment of plan assets in a company he owned was a prohibited transaction). These cases are not relevant to the arguments Plaintiffs make in their Complaint.

The Credit Union's conduct does not support a finding that it breached ERISA § 406(b)(1). Therefore, the Credit Union respectfully requests that the Court enter summary judgment on Count II of the Complaint.

**D.    The Credit Union is Entitled to Summary Judgment Because Plaintiffs' Proffered Damages Model is not Consistent with its Theory of Liability Against the Credit Union.**

Summary judgment is appropriate here for the additional reason that Plaintiffs' damages theory and calculations are not traceable to the misconduct they have alleged against the Credit Union. (Motion, Doc. 181 at 12-13.) The Supreme Court has made clear that plaintiffs' theory of damages in a Rule 23 class action "must be consistent with [their] liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013); see also *Ludlow v. B.P.R.L.C.*, 800 F.3d 674, 686 (5th Cir. 2015). The same principles should apply here, even though Plaintiffs are pursuing their claims on behalf of the Plan as ERISA representatives.

The Credit Union has had difficulty identifying Plaintiffs' damages theories. They have changed multiple times in the course of this lawsuit. (Motion, Doc. 181 at 12-13.) Plaintiffs'

designation of Mr. Librock as a damages expert further confuses the issues. (Librock Report, Doc. 203.) Mr. Librock's report does not include any analysis or calculations supporting Plaintiffs' self-dealing allegations against the Credit Union. (*Id.*) Mr. Librock confirmed in his deposition that he would not offer an opinion that the Credit Union engaged in self-dealing. (Librock Depo. 56:11-16, App. AAFCU 19.) Mr. Librock will also not offer any opinions regarding the income or fees purportedly received by the Credit Union from Plan assets. (Librock Depo. 55:24-56:10, App. AAFCU 18-19) Nor is Mr. Librock going to offer any opinions regarding the Credit Union's use of Plan assets. (Librock Depo. 56:23-57:1, App. AAFCU 19-20.) Finally, Mr. Librock did not opine in his report about the impact that the Credit Union's purported self-dealing had on dividend rates paid to Plan participants in the Credit Union Option. (Librock Report, Doc. 203 at ¶¶16-21.) The omission of this critical expert analysis makes Plaintiffs' damages calculation from their theory of liability against the Credit Union. Without any other evidence of damages, Plaintiffs cannot succeed on Count II.

### IV.    CONCLUSION AND PRAYER

For all the foregoing reasons, Defendant American Airlines Federal Credit Union moves for an order granting its Motion for Summary Judgment and for any other relief to which it may be justly entitled.

WHEREFORE, PREMISES, CONSIDERED, Defendant American Airlines Federal Credit Union respectfully requests that this Court grant its Motion for Summary Judgment, and for all the relief, at law and in equity, to which the Credit Union may show itself entitled.

Dated:  August 3, 2020     Respectfully submitted,


       By: _/s/ Jonathan D. Neerman_____
        Jonathan D. Neerman
        Texas Bar No. 24037165
        Edwin Buffmire
        Texas Bar No. 24078283
        Brian H. Oates
        Texas Bar No. 24088144

       JACKSON WALKER L.L.P.
       2323 Ross Avenue, Suite 600
       Dallas, Texas 75201
       (214) 953-5664 (Direct Dial)
       (214) 661-6899 (Direct Fax)

       **ATTORNEYS FOR AMERICAN AIRLINES
       FEDERAL CREDIT UNION**


## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on August 3, 2020, a true and correct copy of the above and foregoing document has been served all counsel of record via the Court's ECF system:


       /s/ Jonathan D. Neerman_____
       Jonathan D. Neerman