IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG - 5 2020

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| SALVADORA ORTIZ AND THOMAS SCOTT, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | § § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:16-CV-151-A |
| | § | |
| AMERICAN AIRLINES, INC., ET AL., | § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER
## RE SUMMARY JUDGMENT MOTIONS

Before the court for decision are motions for summary
judgment filed by defendants American Airlines, Inc.
("American"), and The American Airlines Pension Asset
Administration Committee ("Committee"), and by American Airlines
Federal Credit Union ("Credit Union").

I.

## History of the Litigation

This action has been pending for four and one-half years.
Therefore, the reader of this opinion probably will benefit from
a discussion of the most-significant developments in the action
during that time period, which the court is providing under this
heading.

1

The court has had, and defendants have expressed, uncertainty concerning the exact nature of the claims that are being asserted by plaintiffs, which were not resolved until plaintiffs clearly defined their claims in a document they filed November 12, 2019.  <u>Infra</u> at 16-17.[1]  And, the court and the parties have had uncertainty as to whether this action should proceed as a class action or simply as a representative action as defined in <u>In re AEP ERISA Litigation</u>, No. C2-03-67, 2009 WL 3854943 (S.D. Ohio Nov. 17, 2009).  The court made known its decision on that subject by informing the parties in an order issued June 15, 2020, that the court had concluded that the action should proceed as having been brought by plaintiffs in representative capacities, as contemplated by <u>In re AEP ERISA Litigation</u>.  <u>See</u> Doc. 167 at 2 n.1.[2]  Those uncertainties had roles in the less than rapid progression of this case over the years

A.   <u>Plaintiffs' Complaint</u>

This action was initiated on February 10, 2016, by Salvadora Ortiz ("Ortiz") and Thomas Scott ("Scott")

---

[1] A question has existed as to whether plaintiffs' pleading supports the claims they now define. However, the court has concluded that, given a study of the kind contemplated by <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), there are allegations of facts in the pleading that support plaintiffs' now-defined claims.

[2] The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:16-CV-151-A.

("plaintiffs"), on behalf of themselves and others similarly situated, by the filing of a "Class Action Complaint (ERISA)" naming as defendants American, Committee, and Credit Union.

A summary description of plaintiffs pleading follows:

Plaintiffs alleged that in filing the action, they were acting as representatives of a 401(k)[3] retirement plan for employees of participating AMR Corporation subsidiaries (the "Plan") as authorized by §§ 502(a)(2) and (3) of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA") [29 U.S.C. §§ 1132(a)(2) and (3)]. Doc. 1 at 1-2, ¶¶ 1 & 2. Each defendant was alleged to be a fiduciary as to the Plan and its participants, and each allegedly violated fiduciary duties owed to the Plan and its participants. Each named plaintiff was a participant in the Plan, as defined in ERISA § 3(7) [29 U.S.C. § 1002(7)], and has owned, directly or indirectly, an interest in the Plan's investment option that is referred to in the complaint as the American Airlines Credit Union Demand Deposit Fund ("AA Credit Union Fund").

In addition to asserting actions on behalf of the Plan, plaintiffs alleged class action facts on behalf of all participants and beneficiaries of the Plan who invested directly or indirectly in the AA Credit Union Fund at any time from

---

[3] The "401(k) designation derives from the compliance by the Plan with the deferred compensation requirements of 26 U.S.C. § 401(k).

February 12, 2010, through the date of the judgment in this action (excluding certain categories of persons). Id. at 9-11.

The Plan is an employee pension benefit plan within the meaning of ERISA § 3(2)(A) [29 U.S.C. § 1002(2)(A)]. It is an eligible individual account plan, which provides an individual retirement account for each participant, as contemplated by ERISA § 3(34) [29 U.S.C. § 1002(34)], the benefits of which are based solely on the amount contributed to the participant's account, with adjustments for income, gains, losses, and expenses. Such a plan is commonly referred to as a "defined contribution plan." The participants select the investments to be made in their accounts from investment options provided for the participants by one or more Plan fiduciaries. The Plan is intended to comply with ERISA § 404(c) [29 U.S.C. § 1104(c)] and related regulations.

By ERISA regulation, one of the investment options that must be provided to the participants of such a plan is an income-producing, low-risk, liquid fund. The only option provided by defendants to the Plan participants for an investment in that category was the AA Credit Union Fund, which is a fund sponsored and managed by Credit Union.

Defendants violated their fiduciary duties by having the AA Credit Union Fund as the only Plan investment option that would qualify as an income-producing, low-risk, liquid fund. The AA

4

Credit Union Fund produced extremely poor investment returns.
The return on the AA Credit Union Fund was at all material times
less than a poorly managed checking account. At the same time
that the AA Credit Union Fund was providing the Plan
participants who invested in it the meager returns described
above, checking accounts offered by Credit Union to its
depositors paid better returns than those earned by the Plan
participants who elected to invest in the AA Credit Union Fund.
One such account paid interest at the rate of 2.27%.  Stable
value funds, commonly used by large plans similar to the Plan,
typically offered a greater return on a participant's investment
than does the AA Credit Union Fund.

Had defendants properly performed their fiduciary
obligations to the Plan and its participants, the income-
producing, low-risk, liquid fund option would have been, or
included, an option known as a stable value fund.

If the Plan funds invested in the AA Credit Union Fund had
instead been invested in a stable value fund returning average
benchmark returns during the proposed class period, plaintiffs
and the other Plan participants would not have lost tens of
millions of dollars in their retirement savings, and would not
continue to suffer additional losses as a result of the
existence of the AA Credit Union Fund option in the Plan.

American Airlines and Committee are liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from their breach of fiduciary duties related to the failure to provide a stable value fund as an investment option.

At all relevant times, Credit Union held $1 billion in Plan assets in the AA Credit Union Fund, which is a demand deposit account, for which it had a fiduciary obligation to pay a reasonable rate of interest. Rather than to pay a reasonable rate of interest to the Plan participants who elected to invest in the AA Credit Union Fund, Credit Union used the $1 billion in Plan assets it held as investments by Plan participants to provide loans to members of Credit Union and to make other investments for which it earned substantial income, which, in turn, permitted Credit Union to offer substantially higher interest rates on similar demand deposit accounts to customers other than the Plan participants who invested in the AA Credit Union Fund. Credit Union should have paid to plaintiffs in the proposed class at least the same rate of interest it was offering to its other customers.

Consequently, Credit Union is liable under 28 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from Credit Union's breach of fiduciary duty in failing to pay to the Plan participants a reasonable rate of return on investments they made in the AA Credit Union Fund option.

American and Committee share with Credit Union, as co-fiduciaries, liability under 29 U.S.C. § 1105(a) for those losses by reason of having participated in Credit Union's breach of fiduciary duty, knowing that Credit Union's conduct was such a breach, by failing to take reasonable efforts under the circumstances to remedy the breach and by reason of ERISA § 406(a) [29 U.S.C. § 1106(a)], which prohibits transactions between the Plan and a party-in-interest.

Plaintiffs alleged three causes of action. First, in Count I, they alleged that American and Committee violated their fiduciary duties of loyalty and prudence by failing to remove the AA Credit Union Fund option from the Plan, as the Plan's "income producing, low risk, liquid fund." Doc. 1 at 11-12. Second, in Count II, they asserted that the Credit Union breached its duty of loyalty by dealing with Plan assets for its own account. Id. at 13-14. And, third, in Count III, plaintiffs asserted that American and Committee engaged in a transaction prohibited by ERISA by allowing Plan assets to be invested in AA Credit Union Fund's demand deposit account. Id. at 14-15.

B.    The Motions to Dismiss

In May 2016, American and Committee filed a motion to dismiss, asserting as its grounds that (a) the inclusion of the Credit Union option in the Plan did not signal imprudence or

disloyalty, (b) plaintiffs failed to allege facts stating a
claim for co-fiduciary liability, and (c) the co-fiduciary
liability claim must be dismissed because the Credit Union's
above-average dividends show that its returns were reasonable.
Doc. 26 at 7, 12, 13.

Credit Union filed a motion to dismiss in May 2016 for
failure to state a claim on the grounds that the claims against
Credit Union failed to allege sufficient facts to support
plaintiffs' contention that Credit Union violated 28 U.S.C.
§ 1106(b)(1), because the alleged prohibited transactions fell
within ERISA's exemptions, and the other counts pleaded by
plaintiffs did not allege facts supporting a cause of action
against the Credit Union.  Doc. 20 at 5, 7, 9.

C.   The Proposed Settlement

After having obtained extensions of time for the filing of
responses to the motions to dismiss, rather than to file such a
response, plaintiffs filed July 18, 2016, a document titled
"Unopposed Motion for Order Preliminarily Approving (I)
Conditional Certification of the Settlement Classes; (II)
Appointment of Lead and Class Counsel; (III) Preliminary
Approval of Settlement; and (IV) Approval of Form and Manner of
Notice."  Doc. 51.  The proposed settlement contemplated that a
settlement class would be approved, and that, after notice to
the proposed class members, the claims of plaintiffs and the

class would be settled by a payment by defendants, in two segments, of a total of $8,800,000, one-third of which was to be received by the attorneys representing the plaintiffs. Doc. 54 at 19 n.6.[4]

In their efforts to persuade the court to approve the settlement, plaintiffs and their counsel so convinced the court of the merit of plaintiffs' claims on behalf of the class that the court concluded, among its concerns relative to the terms of the proposed settlement, that the amount to be received by the settlement class was not sufficient. The court's concerns are set forth in the memorandum opinion and order the court issued on November 18, 2016. Doc. 54 at 14-33.

However, the court withheld a final ruling relative to the settlement so that the parties might have an opportunity to provide to the court additional information that would cause the court to conclude that the settlement was appropriate. Id. at 30-34.

D. Efforts to Obtain Further Information Relative to the Settlement Negotiations; and, the Court's Decision to Decline to Approve the Settlement

After the court issued its November 18, 2016 memorandum opinion and order, there was significant activity related to the

---

[4] The information the court found persuasive in denying the request for approval of the settlement are set forth, in part, at pages 14-17 of the court's November 18, 2016 memorandum opinion and order. Doc. 54. The court explained in its October 6, 2017 order the sequence of events that led to the denial of the motion for approval of the settlement. Doc. 80.

court's attempts to obtain additional information related to the settlement proposal. See Docs. 55-83. On October 6, 2017, after having considered all of the material it had received pertaining to the proposed settlement,[5] the court issued an order denying all relief sought by the July 2016 Unopposed Motion for Order Preliminarily Approving (I) Conditional Certification of the Settlement Classes; (II) Appointment of Lead and Class Counsel; (III) Preliminary Approval of Settlement; and (IV) Approval of Form and Manner of Notice. Doc. 80. The efforts of the court to obtain meaningful information relative to the proposed settlement are outlined in the October 6, 2017 order. Id. The court stated that "[f]or the reasons given on pages 23-

---

[5] On page 32 of the November 18, 2016 order, the court described in some detail the information it required before it would be in a position to make a ruling on the proposed settlement. Doc. 54 at 32. The court encountered difficulty in obtaining the requested information, and questions that it ever obtained everything plaintiffs represented to the court in their filings they relied on in making the allegations they made in their complaint and in making their decision to enter into a settlement. For example, on April 4, 2017, the court noted in one of the orders it issued relative to its desire to receive and review additional information, the following:

> The court notes that plaintiffs have provided the court very little of the information in which the court expressed an interest on page 32 of the November 18, 2016 order in receiving to assist the court in making a decision as to the relief sought by plaintiffs by their July 18, 2016 motion. Presumably all or some part of that material will be included in the documents and other items plaintiffs propose to present to the court for in camera review. If that will not be the case, the court expects plaintiffs to include in the document plaintiffs are to file by April 13, 2017, an explanation of why the plaintiffs are not making a full disclosure as suggested at pages 32-33 of the November 18, 2016 order.
>
> Conspicuously absent from the material plaintiffs have furnished to the court is anything related to the discovery and interview activities mentioned on page 17 of the court's November 18, 2016 order. The court questions why those items could be of a privileged nature. The court directs plaintiffs to comment on those subjects in the document they are to file by April 13, 2017, pursuant to this order.

Doc. 76 at 2-3. Unfortunately, the court was never satisfied that it received a full disclosure. See Doc. 77, Ex. B.

27 of the November 18, 2016 memorandum opinion and order, the court is unable to conclude that there is good cause for the entry of an order, or the scheduling of a hearing, as sought by plaintiffs' July 18, 2016 motion." Id. at 6.

E.   Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss

On November 6, 2017, plaintiffs filed their consolidated opposition to the motions to dismiss.  Doc. 81.  Summed up, plaintiffs vigorously maintained that they had alleged facts that plausibly stated causes of action against each of the defendants.  Plaintiffs summarized their position in opposition to the motions by the following statements in their consolidated opposition:

> In reality, the gravamen of Plaintiffs' Complaint is that the Credit Union Fund performed so poorly during the relevant time period that allocating more than $1 billion in Plan assets thereto was a breach of their fiduciary duty of prudence. Although a stable value fund is certainly *one alternative* to the deeply-flawed option the American Airlines Defendants did choose, it is not *the only* such alternative.

Id. at 1-2.

*  *  *  *  *

> Plaintiffs allege that Defendants, by virtue of their bizarre choice to eschew better performing retirement investment options in favor of the AA Credit Union Fund and the exceedingly poor performance thereof, violated their duties of prudence and loyalty to the Plan and its participants like Plaintiffs. *Compl.* at ¶¶ 37, 44 *et seq.* Further, Defendants' misconduct constitutes a prohibited transaction under ERISA. *Compl.* at ¶¶ 52 *et seq.*

11

Id. at 4.

\* \* \* \* \*

F.   Denial of the Motions to Dismiss

By order issued November 27, 2017, the court denied both of the motions to dismiss, noting that "[t]he court is satisfied that plaintiffs have met their pleading burden" and that "[t]he arguments defendants make go to the merits of the claims and would more properly be presented by motions for summary judgment." Doc. 84 at 2.

G.   Order Directing the Filing of an Appropriate Motion for
     Class Certification, and the Filing of the Motion

As of March 23, 2018, plaintiffs had not filed a motion for class certification other than the inclusion of a request for conditional certification in the motion they filed related to the proposed settlement in July 2016.   In an order signed March 23, 2018, the court gave plaintiffs a deadline of April 23, 2018, for the filing of an appropriate motion for class certification, along with a supporting brief.   Doc. 87. On the deadline fixed by the court, plaintiffs filed such a motion and supporting memorandum and appendix.   Docs. 88, 89, 90.   The motion was opposed, and the motion and opposition led to a number of filings by the parties.   See Docs. 94-99, 101-04, 108, 109, 112, 114, 116-17, 120, 122-23, 127-29.

H.    The Declarations of Three Plaintiffs' Experts That
      Accompanied Their Motion for Class Certification

     Plaintiffs provided the court with their motion for class

certification declarations of three persons that plaintiffs

represented are experts who would be used by plaintiffs at the

trial of this action to establish plaintiffs' theories of

liability and damages.  They were Jack DeWitt ("DeWitt"), Roger

Levy ("Levy"), and James King, Jr. ("King").

     DeWitt represented that he had been retained by plaintiffs

to provide expert opinions concerning the methodology for the

determination and calculation of damages related to the claims

asserted by plaintiffs and the putative class members.  Doc. 90

at APPX 31.  So far as the court can determine, DeWitt did not

put any information in his declaration that would benefit the

court in any decision that would be required for resolution of

this action.

     Levy represented that he was retained by the plaintiffs to

provide an expert opinion in connection with plaintiffs' motion

for class certification.  He included in his declaration the

opinions he had formed, none of which appear to further the

interests of plaintiffs in this action.  Id. at APPX 79.

     King said in his declaration that he was retained by the

plaintiffs to provide an expert opinion in connection with

plaintiffs' motion for class certification.  Id. at APPX 93.

13

The summary and conclusions in his declaration suggest that his contribution at trial would be to establish the superiority of the financial return of a stable value fund over the return of the AA Credit Union Fund option, but he provided no dollar and cents information in his declaration.

The court did not find helpful in any of its decision-making any of the documents filed by plaintiffs in support of their motion for class certification.

I.   The Telephone Hearing Relative to the Status of Plaintiffs' Case

Because of the shortcomings of the class certification documents plaintiffs filed April 23, 2018, and the uncertainties that arose from that filing and subsequent filings by the parties, concerning the exact nature of plaintiffs' claims and whether this action should proceed as a class action or as a representative action under the authority of 29 U.S.C. § 1132(a)(2) and (3), the court arranged for a telephone hearing on September 18, 2018, during which counsel for plaintiffs and defendants were on the line.  Doc. 133.  For the reasons expressed during that telephone hearing (id. at 21-25), and because none of plaintiffs' proposed experts provided meaningful or definitive opinions in their respective declarations (Doc. 90 at APPX 31-110), the court made known that it did not find any of those declarations helpful as to any of the legal or factual

14

issues that required resolution in this action.  The court
discussed other inadequacies in plaintiffs' class certification
filings, and gave the parties an opportunity to file
supplemental briefing on certain issues.

J.    The September 30, 2019 Order and Responses Thereto

In a further effort to resolve uncertainties concerning
positions that are being taken by the plaintiffs in this action,
the court issued an order on September 30, 2019 (Doc. 153),
posing the seven questions set forth below to be answered by the
parties, either jointly, or, if a joint answer could not be
agreed upon, separately:

Question No. 1:   Should This Action Should Proceed as a
Class Action?

Question No. 2:   Is Notification to Other Participants and
Beneficiaries of the Plan Required or
Desirable?

Question No. 3:   What Is an Appropriate Ending Date for the
Period of Time for Calculation of Damages?

Question No. 4:   Does Each of the Plaintiffs Have Standing
to Bring This Action as a Representative
of the Plan?

Question No. 5:   What Relief Are Plaintiffs Now Seeking?

Question No. 6:   Have Plaintiffs Made the Disclosures
Required by the Federal Rules of Civil
Procedure as to Each of the Forms of
Relief Plaintiffs Are Seeking on Behalf of
the Plan?

Question No. 7:   What Technique or Procedure Do Plaintiffs
Have in Mind in Determining Allocation
among Participants and Beneficiaries of

                         the Plan of Whatever Recovery Might Be
                         Made for the Plan in This Action?

Doc. 153 at 1, 6, 7, 8, and 10.   The responses the parties made

to that order are described in some detail in an order the court

issued June 15, 2020.   Doc. 168.

K.    Orders Requiring Identities and Reports of Experts to Be
      Used at Trial, and Responses Thereto

      On June 15, 2020, the court, after having called the

attention of the parties to the recent decision of the Supreme

Court in Thole v. U.S. Bank N.A., ___ U.S. ___, 140 S. Ct. 1615

(2020), Doc. 168 at 14-18, ordered that by July 6, 2020,

plaintiffs provide the court identities of, and reports from,

the experts they propose to use to establish damages suffered by

each of the named plaintiffs and supporting their theories of

damages suffered by the Plan.   Those theories, as described by

plaintiffs in an item filed November 12, 2019, as plaintiffs'

answer to Question No. 7, supra at 15, were as follows:

           Plaintiffs' Complaint presents two independent
      claims of separate breaches of fiduciary duty against
      two different defendants, each with a separate theory
      for the calculation of damages.

           First, Plaintiffs claim that American Airlines
      breached its fiduciary duty by imprudently and
      disloyally selecting and retaining a capital
      preservation option (the AAFCU option) that had
      dramatically lower investment returns than other
      readily available capital preservation investments,
      including stable value funds. The measure of damages
      against the American Airlines Defendants is the
      difference between the interest rate that would have

                                  16

been provided by the prudent choice and the much lower
interest earned on the alleged imprudent choice.

*Second,* Plaintiffs claim that the AAFCU, as a
Plan fiduciary holding plan assets and responsible for
the investment of Plan assets, breached its fiduciary
duties by using those Plan assets for its own benefit
and failing to pay a reasonable rate of interest to
the Plan, as required by ERISA § 408(b)(4). The
measure of damages against the AAFCU for that
misconduct is the difference between (i) a reasonable
rate of interest, taking into account the investment
income earned by the AAFCU using the Plan's deposits,
as well as the amount of interest paid to other
depositors (during the Class Period, the AAFCU paid
other depositors more than 2% interest on deposits up
to $2,500), and (ii) the lower rate of interest that
was actually paid to Plan participants.

If both American Airlines and the AAFCU are found
liable, then the damages attributable to the breach of
fiduciary duty by American Airlines would be offset by
the amount of damages to be paid by the AAFCU since in
either case the maximum damages owed to the Class
would be measured by the difference between the
interest that would have been paid by a prudently
selected capital preservation option and the interest
actually paid by the AAFCU. The breach by the AAFCU
was secondary to the American Airlines breach and
served to increase the loss suffered by the Plan (and,
by extension, its participants). Had the AAFCU paid a
reasonable rate of interest, the damages owed by
American Airlines would have been less.

Doc. 154 at 3-4.

By a second order issued on June 15, 2020, the court

directed defendants to file by July 13, 2020, a document

identifying each expert a defendant proposed to use as an expert

witness at the trial of this action and file a report of each

such expert.  Doc. 167.

17

L.    The Experts Identified by Documents the Parties Filed in
      Response to the June 15, 2020 Orders

      1.    Plaintiffs' Experts

      Plaintiffs filed documents on July 6 and 10, 2020, in

response to the June 15, 2020 order requiring them to make

disclosure of expert witness information.  Docs. 192, 193, 202 &

203.  They disclosed identities, and provided reports, of two

experts who would testify on their behalf.

      The first, King, said in his report that he is of the

opinion that American and Committee were at fault in not causing

the investment options for participants in the Plan to include a

stable value fund; that such a fund would be an investment

option superior to the AA Credit Union Fund option; that the

Plan suffered damages in the form of the difference in income

that its participants would have earned by investment in a

stable value fund option, if properly offered, and what they

actually earned from investment in the AA Credit Union Fund

option; and, that the named plaintiffs, Ortiz and Scott,

suffered losses of $3,000 and $8,400, respectively, in income

they would have earned had their AA Credit Union Fund

investments been, instead, in a stable value fund.  Doc. 193 at

APPX3-APPX4.  Additionally, he proposes to testify that

Committee and its successor committees should not have used the

AA Credit Union Fund as the Plan's principal preservation

18

option, but should have used a stable value fund instead.  Id.
In his report, he expressed other opinions, all related to the
subject matters of the main opinions mentioned above.  Id. at
APPX4-APPX15.

The other proposed expert of plaintiffs was identified as
Neil Librock ("Librock").  Docs. 202 & 203.  His opinions were,
for the most part, on the same subjects to which expert witness
King devoted his attention.  A summary of Librock's most
significant opinions, as set forth in his report, is as follows:

18.  The historic rate of return on the AA Credit
Union Option has been very low, averaging only 50
basis points (one-half of one percent) over the nine-
year analysis period, and at times as low as 0.1% .
This very low rate of return means that employee
retirement contributions into the Credit Union Option
generate very low future value for the employees. In
fact, over the past 10 years, the Credit Union
Option's rate of return has been significantly less
than the U.S. inflation rate, meaning employees are
actually worse off for having invested their
retirement savings in the Credit Union Option rather
than simply holding cash in their homes.

19.  For each year from 2013 – 2018 the Fund rate
of return was significantly lower than other AAFCU
member deposit accounts, even though prior to 2013 the
Credit Union Option earned the same interest rate as
typical shares of the Credit Union and Individual
Retirement Accounts (also known as "IRAs") invested
with the Credit Union. The Credit Union Option, which
is tied to a large long-term retirement account, is a
more stable source of deposits and, in a competitive
banking market, should offer rates of return
equivalent to certificates of deposit. In my opinion,
the rates of return for the Credit Union Option from
2010-2018 were not competitive.

20.   Plaintiffs Ortiz and Scott suffered lost financial opportunity due to their investments in the Credit Union Option. Stated differently, Ortiz and Scott could have had more retirement savings if their investments had been placed in a product with a more competitive interest rate. Ms. Ortiz suffered lost economic opportunity of approximately $1,116 (without compounding) from January 1, 2010 through August 5, 2016. Mr. Scott suffered lost economic opportunity of approximately $1,843 from January 1, 2010 through October 21, 2011.

21. Similarly, the Participants (and the Plan as a whole) suffered lost economic opportunity of approximately $61,281,000 from January 1, 2010 through December 31, 2018 (without compounding) from investments in the Credit Union Option.

Doc. 203 at APPX9-APPX10.

In plaintiffs' July 6, 2020 filing, titled "Plaintiffs' Disclosure of Expert Witnesses," they again defined the nature of their claims against American, Committee, and Credit Union (Doc. 192 at 1-2), which were basically the same as the descriptions they used in their November 12, 2019 filing in defining their claims (supra at 16-17).

2.   Experts Designated by American and Committee

By notice filed July 13, 2020, American and Committee named Francis A. Longstaff ("Longstaff") and Walter N. Torous ("Torous") as their experts, and provided copies of their expert reports.  Doc. 205.  Longstaff described in his report the subjects upon which he proposed to provide expert evidence as follows:

a.  Evaluate whether a common method can be used to
determine whether participants were harmed by a
failure to include a stable value fund as a Plan
investment option "either in place of or in
addition to the American Airlines Credit Union
Demand Deposit Option" (the "Credit Union Option")
on a class-wide basis, or whether individual
inquiry would be necessary;

b.  Evaluate whether participants have a common
interest in a determination by the Court as to
whether the Credit Union Option is a prudent and
permissible Plan option.

Doc. 205 at ECF 15 (footnote omitted).[6]  Torous described in his

report his assignment as an expert witness as follows:

5.    Counsel has asked me to:

a.  Discuss different capital preservation
investment vehicles and the relevant
differences in the risks and liquidity
thereof;

b.  Assess whether, from an economic
perspective, it was reasonable to include
the American Airlines Credit Union Demand
Deposit Option ("Credit Union Option") in
the Plan lineup; and

c.  Review and, where appropriate, respond to
the opinions and analyses presented by
Plaintiffs' expert James J. King, Jr.
Specifically, I was asked to respond to
Mr. King's opinion that "stable value
funds are a superior investment option
than both demand deposit accounts (such
as the [Credit Union Option]) and money
market funds for use as a principal
preservation option in defined
contribution plans." I was also asked to
respond to Mr. King's assertion that the
Plan's failure to offer a stable value

---

[6] The ECF page number references are to the ECF header numbers at the tops of the pages.

fund resulted in losses in excess of $180
million over the 2010 to 2017 period
("Review Period").

Doc. 205 at ECF 120 (footnotes omitted).

3.   Expert Designated by Credit Union

By a document filed July 13, 2020, Credit Union designated

Jeffrey P. Gaia ("Gaia") as its proposed trial expert, and

provided a copy of Gaia's report. Doc. 206. Gaia explained his

role as an expert witness in this case as follows:

> AAFCU, through its counsel, retained me as an expert
> witness to provide professional opinions, based on my
> experience, on Plaintiffs' claims against Defendant
> AAFCU. Importantly, the scope of my opinions is
> directed to address only those claims against
> Defendant AAFCU. Specifically, that:
>
> - AAFCU was unjustly enriched by setting "below
>   market" interest rates on the *"Credit Union
>   Option"* product offered to participants in *The
>   Plan*.
>
> - AAFCU knowingly underpriced the *Credit Union
>   Option* at levels below what Plaintiffs claim
>   was a comparable product offering, the
>   *"Priority Checking"* account.
>
> - Therefore, participants in *the Plan* who
>   invested Plan balances in the *Credit Union
>   Option* were damaged in an amount equal to the
>   rate differential existing between the actual
>   paid rate on balances invested in the *Credit
>   Union Option* versus the rate offered in the
>   *Priority Checking* account product, or the
>   "effective rate" as described by Mr. Librock.
>
> In addition, Mr. Librock has raised a new damage claim
> theory in his report that is not identified in the
> Complaint. I will address, therefore, Mr. Librock's

22

use of an "effective interest rate" in the calculation of damages.

Doc. 206 at ECF 7-ECF 8 (footnotes omitted).

M.   Issuance of a Scheduling Order, Motions of Plaintiffs' In Response Thereto, and Rulings Thereon

On June 24, 2020, the court issued an order setting schedule and providing special pretrial instructions, which, inter alia, fixed a discovery deadline of July 17, 2020, a pretrial conference date of August 7, 2020, and a trial date of September 14, 2020.[7]  Doc. 169.

N.   Denial of Class Certification

On July 1, 2020, the court issued an order denying plaintiffs' motion for class certification, and expressed the conclusion that the court is satisfied that plaintiffs filed this action on behalf of the retirement plan in question pursuant to the authority of 29 U.S.C. § 1132(a)(2) & (3) and that there is no need for plaintiffs to proceed as representatives of a class.  Doc. 176.

---

[7] No jury having been requested, the court setting was a non-jury trial.  Motions for continuance of deadlines or activity dates contained in orders of the court were filed, and, for the most part, were denied.

O.   <u>The Motions for Summary Judgment</u>

    1.   <u>The Joint Motion Filed by American and Committee</u>

In their joint motion for summary judgment, American and Committee based their request for summary judgment on the following grounds:

    I.    UNDISPUTED FACTS FORECLOSE PLAINTIFFS' CLAIM THAT DEFENDANTS IMPROPERLY SELECTED OR RETAINED THE CREDIT UNION OPTION (COUNT I)

        A. Plaintiffs Lack Article III Standing to Bring Their Imprudence Claim Because They Have Failed to Establish That They Suffered An Injury In Fact.

        B. Plaintiffs' Challenge To The Initial Selection Of The Credit Union Option Is Time-Barred.

        C. Undisputed Facts Preclude Plaintiffs From Establishing That the Credit Union Option Was An Unreasonable Retirement Investment Vehicle, And Thus That the Fiduciaries Improperly Retained It.

            *1. Plaintiffs have failed to provide a meaningful benchmark to support their imprudence claim.*

                (a) Greater Risk
                (b) Less Liquidity

            *2. Plaintiffs' Criticism of Options Like the Credit Union Option Is Out-Of-Step With Fiduciary Practice, And Recent Cases Have Rejected Similar Categorical Challenges to Capital Preservation Options With Lower Returns.*

            *3. Plaintiffs' Argument Ignores the Role of the Credit Union Option Within the Plan's Broader Investment Menu.*

II.   UNDISPUTED FACTS SHOW THAT PLAINTIFFS' CLAIM FOR CO-
FIDUCIARY LIABILITY AGAINST AMERICAN AIRLINES FAILS
(COUNTS I AND II).

III.  UNDISPUTED FACTS ESTABLISH THAT THE PLAN'S CREDIT
UNION OPTION FALLS WITHIN AN ERISA PROHIBITED
TRANSACTION EXEMPTION, THUS PRECLUDING
PLAINTIFFS' PROHIBITED TRANSACTION CLAIM (COUNT III).

Doc. 178 at ECF 3 & Doc. 185-1 at ECF 3.

The joint motion was filed in both a redacted version and
an unredacted version, and, in each instance, was accompanied by
a brief and a supporting appendix in three volumes.   Docs. 178,
179 & 182; Doc. 185-1, 185-2, 185-3 & 185-4.

2.   Credit Union's Motion

Credit Union filed its motion for summary judgment on
July 3, 2020.   Doc. 180.   It was accompanied by a brief and
appendix.   Docs. 181 & 183.

Credit Union urges as grounds for its motion each of the
following:

B. The Credit Union is Entitled to Summary Judgment on
Count II Because Plaintiffs Lack Article III
Standing to Bring They Have Failed to Establish
That They Suffered an Injury in Fact.

C. The Credit Union is Entitled to Summary Judgment on
Count II Because the Credit Union Is Not a Fiduciary for
the Purposes Alleged in the Complaint.

D. The Credit Union is Entitled to Summary Judgment on
Count II Because the Credit Union Did Not Use Plan
Assets For Its Own Interest Or Its Own Accounts in
Violation of 29 U.S.C. § 1106 (b)(1).

> E. The Credit Union is Entitled to Summary Judgment on
> Count II Because the Credit Union's Above-Average
> Dividends Show Its Returns Were Reasonable.

Doc. 181 at ECF 2.

P.   Plaintiffs' Oppositions to the Motions

1.   Opposition to the Motion of American and Committee

Plaintiffs' amended opposition to the joint motion of
American and Committee was filed July 21, 2020.  Doc. 215.  It
was accompanied by a supporting memorandum and a three-volume
appendix.  Doc. 212.

Basically, plaintiffs responded by arguing that, at the
least, the summary judgment presents issues of fact to be
decided by the jury as to each of the factors upon which
defendants relied in support of their motions.  Plaintiffs added
that the limitations ground of the motion of American and
Committee is unfounded because of the ongoing duty of a
fiduciary to exercise proper care relative to investment options
and that American and Committee relied on the wrong standard
concerning co-fiduciary liability.  They described the bases of
their opposition as follows:

> A. Plaintiffs Have Standing
>
> American Airlines' Standing Argument Fails On the
> Facts
>
> American Airlines' Standing Argument Fails On The
> Law

26

B. American Airlines' Statute of Limitations Argument
Ignores Supreme Court Precedent On Continuing
Violations of ERISA

C. Plaintiffs' Claim For Breach Of Defendants' Duty Of
Prudence Should Proceed To Trial

Plaintiffs Have Identified An Appropriate
Benchmark—Stable Value

The Performance Of Money Market Funds Is Irrelevant

The Breadth of the Plan's Investment Menu Does Not
Absolve American Airlines Of Liability For An
Imprudent Investment Option

D. American Airlines Applies The Wrong Standard In Its
Argument Concerning Co-Fiduciary Liability

Doc. 215 at ECF 2.

2.   <u>Opposition to Credit Union's Motion</u>

Plaintiffs' opposition to Credit Union's motion and

supporting memorandum and appendix were filed July 21, 2020.

Docs. 213-14.

Again, basically the response was that, at the least, fact

issues have been raised as to factors pertinent to plaintiffs'

claims against Credit Union.   In their supporting memorandum,

plaintiffs describe the bases for their opposition as follows:

A.   Plaintiffs have Article III Standing

B.   The Credit Union is a Fiduciary to the Plan

C.   The Credit Union Dealt in Plan Assets for its own
interest, Which Is A Per Se Violation of ERISA

27

D.   The Credit Union Failed to Discharge its Burden to
     Establish that the Rates were Reasonable

Doc. 213 at ECF 2.

II.

Analysis

A.   Summary Judgment Standards

Rule 56(a) of the Federal Rules of Civil Procedure provides
that the court shall grant summary judgment on a claim or
defense if there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law.  Fed.
R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
247 (1986).  The movant bears the initial burden of pointing out
to the court that there is no genuine dispute as to any material
fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).
The movant can discharge this burden by pointing out the absence
of evidence supporting one or more essential elements of the
nonmoving party's claim, "since a complete failure of proof
concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial."  Id. at 323.

Once the movant has carried its burden under Rule 56(a), the
nonmoving party must identify evidence in the record that
creates a genuine dispute as to each of the challenged elements
of its case.  Id. at 324; see also Fed. R. Civ. P. 56(c) ("A
party asserting that a fact . . . is genuinely disputed must

28

support the assertion by . . . citing to particular parts of
materials in the record . . . ."). If the evidence identified
could not lead a rational trier of fact to find in favor of the
nonmoving party as to each essential element of the nonmoving
party's case, there is no genuine dispute for trial and summary
judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi
Prot. & Advocacy Sys. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits,
> interrogatories, admissions, and depositions could
> not, as a whole, lead a rational trier of fact to find
> for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is
the same as the standard for rendering judgment as a matter of
law.[8] Celotex Corp., 477 U.S. at 323. If the record taken as a
whole could not lead a rational trier of fact to find for the
nonmoving party, there is no genuine issue for trial.
Matsushita, 475 U.S. at 597; see also Mississippi Prot. &

---

[8]In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit
explained the standard to be applied in determining whether the court should enter judgment on motions
for directed verdict or for judgment notwithstanding the verdict by saying:

> If the facts and inferences point so strongly and overwhelmingly in favor of one party
> that the Court believes that reasonable men could not arrive at a contrary verdict, granting
> of the motions is proper. On the other hand, if there is substantial evidence opposed to
> the motions, that is, evidence of such quality and weight that reasonable and fair-minded
> men in the exercise of impartial judgment might reach different conclusions, the motions
> should be denied, and the case submitted to the jury. A mere scintilla of evidence is
> insufficient to present a question for the jury.

Advocacy Sys., 929 F.2d at 1058.

B.   Time-Bar Ground of the Motion of American and Committee Is
     Without Merit

American and Committee assert a time-bar ground, contending

that "this Court should reject as time-barred any challenge to

American's 'inclusion' of the Credit Union Option in the Plan,"

Doc. 185-1 at 15, insisting that the six-year limitations period

contemplated by 29 U.S.C. § 1113 bars assertion of fault in

including as an investment option the AA Credit Union Fund

option claim because it was first introduced into the Plan more

than thirty-five years ago, with the consequence that the time

to challenge the selection of that option has long since

expired. Id. at 16.

The court does not interpret plaintiffs' criticism of the

existence of the AA Credit Union Fund option as being based

solely on the initial decision of American and Committee to

include that option in the Plan, but interprets the complaint to

be that American and Committee, during the six years before this

action was filed, violated their fiduciary duties by not taking

appropriate steps to remove that option and/or to add to it a

capital preservation investment option that would have been more

financially beneficial to the participants than the AA Credit

Union Fund option.  In other words, plaintiffs' complaint, as

the court understands it, is that during the six years preceding

the filing of this action, American and Committee persisted in what the plaintiffs have characterized as breaches of their fiduciary duties by continuing to have as an investment option the AA Credit Union Fund option and/or by failing to add to the investment options as an income-producing low-risk, liquid fund option a more financially productive option such as a stable value fund. The court concludes that plaintiffs are correct in claiming that American and Committee have had such an ongoing and continuing fiduciary obligation, and that the time-bar ground is without merit. See Tibble v. Edison Int'l, 575 U.S. 523, __, 135 S. Ct. 1823, 1828-29 (2015).

C.   Plaintiffs' Article III Standing

To establish standing, plaintiffs must show that each has suffered a concrete, particularized injury, actual or imminent, fairly traceable to defendants' challenged behavior, and likely to be redressed by a favorable ruling. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Mere violation of duties under ERISA is not in and of itself an injury in fact to plaintiffs. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547-49 (2016); Lee v. Verizon Commc'ns, Inc., 837 F.3d 523, 530-31 (5th Cir. 2016). That ERISA authorizes a participant to sue for restoration of plan losses does not affect the Article III standing analysis. Thole v. U.S. Bank N.A., __ U.S. __, 140 S. Ct. 1615, 1620 (2020).

31

Here, plaintiffs allege that they could have earned better returns had American and the Committee selected a stable value fund instead of the AA Credit Union Fund option as the prudent choice for investments in the Plan.[9] As discussed, _infra_, plaintiffs cannot establish that American and Committee were required to select a stable value fund instead of the AA Credit Union Fund option. But, even if they could, their alleged injuries are at best speculative, not concrete. The Plan provides that participants are responsible for making investment decisions. That is, participants decide whether to invest, how much to invest, and in which options to invest. Doc. 185 at 48-50. Plaintiffs do not point to any evidence showing that they would have chosen the stable value fund for their investments.[10] Instead, the evidence reflects that Ortiz never took even basic steps to evaluate the stable value fund as an investment option when it became available. Doc. 185 at 876-77. Scott chose not to invest in a stable value fund when he had the option to do so. _Id._ at 872. Plaintiffs have not established standing to pursue the claim regarding an alternative capital preservation option,

---

[9] Plaintiffs have from time to time mentioned that a stable value fund is one alternative capital preservation investment to the AA Credit Union Fund. They have never identified any other such alternative. Their complaint names only a stable value fund as the alternative that should have been offered. Doc. 1 at 12, ¶ 41. And, in fact, their expert on the subject, King, opines that a stable value fund should have been offered instead of the AA Credit Union Fund.

[10] In this regard, the court notes that plaintiffs' list of facts to be proven at trial does not list as a fact to be proved that either of the plaintiffs would have chosen to invest in a stable value fund or other capital preservation fund instead of the AA Credit Union Fund option. Doc. 218.

i.e., the stable value fund.

Independently, plaintiffs claim that the Credit Union breached its fiduciary duties by using Plan assets for its own benefit and failing to pay a reasonable rate of interest on the AA Credit Union Fund. Despite the Credit Union's arguments to the contrary, the court is satisfied that plaintiffs have established standing in that regard. Plaintiffs invested in the AA Credit Union Fund; they contend that they should have received a higher rate of interest and that they have been damaged by receiving a lower rate; and, if plaintiffs prevail, their injuries will be redressed.

D.    Breach of Duty Under ERISA

Plaintiffs allege that American and the Committee breached their fiduciary duties by imprudently and disloyally selecting and retaining the AA Credit Union Fund instead of a stable value fund. Doc. 154 at 3. ERISA requires fiduciaries to manage plan assets with the care, skill, prudence, and diligence that a prudent man acting in a like capacity and familiar with such matters would use under the circumstances. Singh v. RadioShack Corp., 882 F.3d 137, 144 (5th Cir. 2018). A fiduciary is required to act with prudence, not prescience. Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc., 712 F.3d 705, 716 (2d Cir. 2013). It must engage in a reasoned decision-making process for investigating the merits of investment options, ensuring

33

that each one remains in the best interest of plan participants. Schweitzer v. Inv. Comm. of the Phillips 66 Savs. Plan, 960 F.3d 190, 197 (5th Cir. 2020). To sustain their claim, plaintiffs must show a breach of duty and loss to the Plan. McDonald v. Provident Indem. Life Ins. Co., 60 F.3d 234, 237 (5th Cir. 1995).

Plaintiffs seem to think it sufficient to show that American and Committee failed to engage in a reasoned decision-making process. Doc. 215 at 17-18. However, procedural lapses alone, assuming plaintiffs could establish any, are insufficient. Plaintiffs must show that the procedural failings led to Plan losses. Schweitzer, 960 F.3d at 199-200; Kopp v. Klein, 894 F.3d 214, 221 (5th Cir. 2018). Moreover, in this case, plaintiffs contend that the AA Credit Union Fund should not have been offered at all by the Plan; hence, they must establish that no reasonable fiduciary would have included such Fund in the Plan. See Singh, 882 F.3d at 158; Whitley v. BP, P.L.C., 838 F.3d 523, 529 (5th Cir. 2016); Pension Benefit, 712 F.3d at 718. The opinion of their expert Mr. King that a stable value fund was a comparable, better-performing principal preservation alternative to the AA Credit Union Fund does not suffice. Doc. 215 at 18.

Plaintiffs complain that the interest rate on the AA Credit Union Fund was "abysmally low." But making a bare allegation does not mean anything without a meaningful benchmark. See Davis

34

v. Washington Univ., 960 F.3d 878, 848 (8ᵗʰ Cir. 2020); Meiners

v. Wells Fargo & Co., 898 F.3d 820, 822 (8ᵗʰ Cir. 2018).

Plaintiffs do not point to any similar demand deposit funds to

show that they earned a better rate of return.[11] Instead, they

rely on a comparison to stable value funds, even though their

expert admits that the two investment options have different

characteristics. See Cunningham v. Cornell Univ., No. 16-cv-6525

(PKC), 2019 WL 4735876, at *13 n.14 (S.D.N.Y. Sept. 27,

2019)(party alleging imprudence based on retaining a specific

fund must demonstrate that a comparator is an "equivalent

investment vehicle"). Notably, the AA Credit Union Fund is a

liquid demand deposit that is fully guaranteed by the United

States government up to $250,000.00. Stable value funds are a

unique asset class that invests directly in high quality bonds

and include a wrap contract, that is, a limited guarantee from

an insurance company or bank. They are not risk free. By

definition, these are apples and oranges.

    That a stable value fund and the AA Credit Union Fund are

not simply interchangeable as plaintiffs contend is further

supported by the cases rejecting challenges to plans that use

money market funds instead of stable value funds. See, e.g.,

White v. Chevron Corp., No. 16-cv-0793-PJH, 2017 WL 2352137, at

---

[11] In fact, plaintiffs' expert admits that the returns of the AA Credit Union Fund exceeded the returns of other demand deposit options during the relevant time period. Doc. 193 , APPX 8, ¶ 15.

*10 (N.D. Cal. May 31, 2017)("No fiduciary selecting a plan's
'safe' option can foresee whether the risks associated with
stable value investment will come to fruition, and a fiduciary
may reasonable choose to avert those risks in favor of a safer
alternative."). See also Moitoso v. FMR LLC, No. 18-12122-WGY,
__ F. Supp. 3d __, 2020 WL 1495938, at *13 (D. Mass. Mar. 27,
2020)("ERISA does not require a retirement plan to offer an
index fund or a stable value fund"); Wildman v. Am. Century
Servs., LLC, 362 F. Supp. 3d 685, 704 (W.D. Mo. 2019)(failure to
include index fund or stable value fund does not violate duty of
prudence).

     Plaintiffs' claims against the Credit Union likewise fail
for a number of reasons. First and foremost is that plaintiffs
have not shown that the Credit Union is a fiduciary under ERISA
for the purpose of their claim. They simply cite to ERISA
§ 408(b)(4), Doc. 1 ¶ 9, but that provision does not make the
Credit Union a fiduciary. Rather it sets forth an exemption from
the prohibitions in ERISA § 406 "if such bank or other
institution is a fiduciary of such plan." 29 U.S.C.
§ 1108(b)(4). As the Fifth Circuit recognizes, a person assumes
fiduciary status under ERISA in three ways: (1) as a named
fiduciary in the instrument establishing the employee benefit
plan, (2) by becoming a named fiduciary pursuant to a procedure
specified in the plan, or (3) as a functional fiduciary under

the broad authority, control, or advice provisions of ERISA

§ 3(21)(A). Perez v. Bruister, 823 F.3d 250, 259 (5th Cir. 2016).

Just because the Credit Union holds Plan assets as deposits does

not make it a fiduciary under ERISA. Carroll L. Wood, III,

D.D.S. v. CNA Ins. Cos., 837 F.2d 1402 (5th Cir. 1988); Tittle v.

Enron Corp. (In re Enron Corp. Secs., Derivative & ERISA

Litig.), 284 F. Supp. 2d 511, 570 (S.D. Tex. 2003). Other

circuits agree. McLemore v. Regions Bank, 682 F.3d 414, 423-24

(6th Cir. 2012); Srein v. Frankford Trust Co., 323 F.3d 214, 222

(3d Cir. 2003); Arizona State Carpenters Pension Tr. Fund v.

Citibank (Arizona), 125 F.3d 715, 721-22 (9th Cir. 1997). Rather,

a debtor/creditor relationship exists between a depositor of

funds and the financial institution. Tex. Commerce Bank-Hurst,

N.A. v. United States, 703 F. Supp. 592, 594 (N.D. Tex. 1988);

Sears v. Continental Bank & Tr. Co., 562 S.W.2d 843, 844 (Tex.

1977). Plaintiffs do not contend that the Credit Union is or

became a named fiduciary. They have not shown that it is a

functional fiduciary.

Further, plaintiffs have not shown that the Credit Union

owed them a duty to pay them more than the AA Credit Union Fund

rate. Their comparison of the AA Credit Union Fund to other

accounts is a red herring as those accounts have different

characteristics. And, there is no evidence that Credit Union

manipulated the rate of return on the AA Credit Union Fund to

benefit itself at the expense of plaintiffs or the Plan. Rather, the evidence is that the Credit Union set the rate on a monthly basis taking into account the dividend rates offered by other credit unions and financial institutions to remain competitive. Doc. 183 at App.-AAFCU 000002-3. Plaintiffs do not dispute that the announced rate was the rate paid. Setting a monthly dividend rate does not make the Credit Union a fiduciary. Insinga v. United of Omaha Life Ins. Co., No. 8:17CV179, 2017 WL 6884626 (D. Neb. Oct. 26, 2017). There is no evidence that the Plan fiduciaries could not have rejected the rates set by the Credit Union or that plaintiffs could not have made different investment choices if they thought the rates were too low. See Teets v. Great-West Life & Annuity Ins. Co., 921 F.3d 1200, 1212 (10th Cir. 2019).

Finally, plaintiffs' argument that the Credit Union dealt in Plan assets for its own interest exhibits a fundamental misunderstanding of the nature of depositary agreements and duties of a financial institution. The record reflects that the Credit Union maintained deposits in cash reserves and short-term investments to meet the liquidity needs of Plan participants. Deposits were always available for withdrawal. Plaintiffs have not shown that the Credit Union's investing of amounts deposited was improper or a violation of any duty owed to them or the Plan.

E.   Co-Fiduciary Liability

To establish co-fiduciary liability against American and Committee under ERISA, plaintiffs must first establish the underlying breach of fiduciary duty by the Credit Union. In re Dell, Inc. ERISA Litig., 563 F. Supp. 2d 681, 695 (W.D. Tex. 2008). For the reasons discussed, supra, plaintiffs have failed to do so, but even if they had, they still could not prevail.

Pursuant to section 405(a) of ERISA, co-fiduciary liability arises in the following circumstances:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). Inasmuch as Credit Union was not a plan fiduciary for purposes of plaintiffs' claims, the provision simply does not apply. Further, the statute does not support vicarious liability, Donovan v. Cunningham, 716 F.2d 1455, 1475 (5th Cir. 1983), and plaintiffs have not come forward with evidence to show that American and Committee knew that Credit Union's conduct constituted a fiduciary breach in any event.

F.   Prohibited Transaction

In Count III of their complaint, Doc. 1 at 14—15, plaintiffs allege that American and Committee engaged in a prohibited transaction under ERISA § 406(a), 29 U.S.C. § 1106(a). Plaintiffs made no response to the ground of the summary judgment motion urging that they could not establish this claim. Apparently, they intend to abandon it. For the reasons discussed, supra, plaintiffs have not shown that the interest earned on the AA Credit Union Fund was not reasonable when compared to similar demand deposit accounts. See Doc. 185 at App. 412-13

III.

Order

The court ORDERS that defendants' motions for summary judgment be, and are hereby, granted; that plaintiffs take nothing on their claims against defendants; and that plaintiffs' claims be, and are hereby, dismissed with prejudice.

SIGNED August 5, 2020.

JOHN McBRYDE
United States District Judge

40