**FILED**

**August 10, 2021**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 19, 2021

Lyle W. Cayce
Clerk

No. 20-10817

---

SALVADORA ORTIZ; THOMAS SCOTT,

*Plaintiffs—Appellants,*

*versus*

AMERICAN AIRLINES, INCORPORATED; AMERICAN AIRLINES
PENSION ASSET ADMINISTRATION COMMITTEE; AMERICAN
AIRLINES FEDERAL CREDIT UNION,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CV-151-A

---

Before SMITH, STEWART, and HO, *Circuit Judges.*

CARL E. STEWART, *Circuit Judge*:

On behalf of themselves and others similarly situated, Plaintiffs-
Appellants Salvadora Ortiz and Thomas Scott have brought suit against
Defendants-Appellees American Airlines, Inc. ("AA"); American Airlines
Pension Asset Administration Committee (the "PAAC"); and American
Airlines Federal Credit Union ("FCU"). Plaintiffs alleged that Defendants
breached their fiduciary duties under the Employee Retirement Income

No. 20-10817

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.[1] Nearly three years after declining preliminary approval of a settlement agreement, the district court awarded Defendants summary judgment. Plaintiffs appealed.

For the reasons that follow, we AFFIRM in part, REVERSE in part, and VACATE in part.

## I. FACTS & PROCEDURAL HISTORY

AA offered a "$uper $aver" 401(k) plan ("Plan"), which allowed its employees to save for retirement by investing a portion of their pre-tax income in the Plan. The PAAC was a fiduciary body charged with selecting investment options for the Plan. Once the PAAC selected options, employees were responsible for deciding whether to invest in the Plan, how much, and in which option. Plaintiffs, who are former employees of AA, invested in the Plan.

The Plan is governed by ERISA since it is sponsored by an employer. Federal regulations urge fiduciaries of ERISA-governed plans to offer at least one "safe" investment option, meaning one that is "income producing, low risk, [and] liquid[.]" 29 C.F.R. § 2550.404c-1(b)(1)(ii), (b)(2), (b)(3). The instant dispute revolves around the Plan's safe offerings, which are also known as "capital preservation options." These options are designed to prioritize protection of the principal investment while still providing positive returns.

---

[1] ERISA "is a comprehensive federal statute that regulates employee benefit plans. It covers defined contribution plans like 401(k) accounts," such as the Plan. *See Miletello v. R M R Mech., Inc.*, 921 F.3d 493, 495 (5th Cir. 2019) (citations omitted).

Case: 20-10817    Document: 00515943590    Page: 3    Date Filed: 08/10/2021
Case 4:16-cv-00151-A    Document 245    Filed 08/10/21    Page 3 of 15    PageID 9849

No. 20-10817

At various points between 2010 and 2016, AA offered two different capital preservation options: a demand-deposit fund and a stable value fund.[2]

A demand deposit fund is the functional equivalent of an interest-bearing checking account. Money invested in such a fund is payable on demand without transfer restrictions. *See* 12 C.F.R. § 204.2(b). Principal investments and any returns associated with them—the "book value"—are guaranteed up to $250,000 per participant by the full faith and credit of the United States government. FCU, which is independent from AA and the PAAC, held the demand deposit fund offered under the Plan (the "FCU Option"). Each month, FCU set the rate of return offered on the FCU Option. FCU notified the Plan in advance of rate changes. Between 2010 and 2017, the FCU Option's rate of return averaged just under 57 cents per every $100 invested. Because FCU held FCU Option investments in cash reserves and short-term investments, it was able, upon demand, to fund the withdrawal of the entirety of the FCU Option's assets.

A stable value fund exposes investors to greater risk than demand deposit accounts and provides only a contractually limited guarantee that participants may withdraw the book value of their accounts. And if the insurer of the fund defaults, the guarantee may be eliminated altogether. Additionally, a stable value fund contains liquidity restrictions. For instance, the fund may prohibit investors from transferring their investments into another low risk "competing" option. It may also restrict when a retirement plan incorporating such a fund may withdraw its entire balance, often requiring at least 12 months' notice before the plan can move funds into

---

[2] AA also offered a money market fund, but that offering is not relevant to the disposition of this appeal.

No. 20-10817

another investment vehicle. The Plan added a stable value offering in late 2015.

Ortiz and Scott both invested in the FCU Option. Ortiz never moved her investments from the FCU Option once the Plan began offering a stable value fund in 2015. Scott likewise never moved his investments from the FCU Option into the stable value fund, though he did transfer those investments into a lower-yielding money market option.

In February 2016, Plaintiffs filed suit on behalf of a putative class of Plan participants who invested at least some of their money in the FCU Option. The complaint included three claims. The first asserted that AA and the PAAC breached their fiduciary duties of loyalty and prudence under 29 U.S.C. § 1104(a)(1)(A)–(B)[3] by failing to remove the FCU Option from the Plan ("Count I").[4] The second contended that FCU breached its fiduciary duty of loyalty under 29 U.S.C. § 1106(b)(1)[5] by dealing with plan assets held by the FCU Option for its own benefit ("Count II"). The complaint also averred AA and the PAAC are liable as co-fiduciaries for FCU's breach. The

---

[3] Section 1104 "sets out distinct but interrelated duties on fiduciaries, including the duty of prudence and the duty of loyalty." *Kopp v. Klein*, 894 F.3d 214, 219 (5th Cir. 2018) (citing § 1104(a)(1)(A)–(B)). "A fiduciary 'who breaches any of the[se] responsibilities, obligations, or duties' becomes 'personally liable' for 'any losses to the plan resulting from each such breach.'" *Id.* (quoting 29 U.S.C. § 1109(a)).

[4] After the district court sought clarity on Plaintiffs' theory of liability for the purposes of class certification, they claimed that AA and the PAAC "breached [their] fiduciary dut[ies] by imprudently and disloyally selecting and retaining [the FCU Option][,] [which] had dramatically lower investment returns than other readily available capital preservation investments, including stable value funds." As AA and the PAAC did select a stable value fund for the Plan in 2015, we (and the district court) take Plaintiffs' theory to be premised on the assertion that AA and the PAAC should have selected a stable value fund instead of—not in addition to—the FCU Option.

[5] Section 1106(b)(1) prohibits a plan fiduciary from "deal[ing] with the assets of the plan in [its] own interest or for [its] own account." § 1106(b)(1).

No. 20-10817

final claim averred that AA and the PAAC engaged in a "prohibited transaction" under 29 U.S.C. § 1106(a)(1)[6] by offering the FCU Option ("Count III").

Five months after bringing this lawsuit, Plaintiffs and Defendants agreed to settle the case pursuant to Federal Rule of Civil Procedure 23. Although the settlement would have required Defendants to pay $8.8 million to the proposed class, Plaintiffs claimed to have lost between $55 and $88 million. The district court therefore sought justification from Plaintiffs for the low payout amount, especially when as much as one third of the settlement funds were to be paid out in attorneys' fees. After providing Plaintiffs with two extensions to supplement the record, the district court concluded that the evidence presented did not justify the settlement figure and so denied preliminary approval of the settlement in October 2017.

The parties proceeded through discovery. In July 2020, the district court declined to certify this case as a class action under Rule 23. The district court, however, permitted Plaintiffs to proceed as representatives of the Plan pursuant to 29 U.S.C. § 1132.[7] AA and the PAAC then filed one summary judgment motion, while FCU filed another. In August 2020, the district court granted each of the defendant's motions.

Plaintiffs timely appealed the district court's decision to award summary judgment and its denial of settlement approval.

---

[6] This provision prevents a plan fiduciary from "caus[ing] the plan to engage" in certain enumerated transactions with a party-in-interest. § 1106(a)(1).

[7] "A § 1132(a)(2) plaintiff acts 'in a representative capacity on behalf of the plan as a whole,' because § 1109 is designed to 'protect the entire plan[.]'" *Pilger v. Sweeney*, 725 F.3d 922, 926 (8th Cir. 2013) (alteration in original) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 & n.9 (1985)).

No. 20-10817

## II. STANDARD OF REVIEW

"[W]e always have jurisdiction to determine our own jurisdiction." *Tex. Democratic Party v. Hughs*, 997 F.3d 288, 290 (5th Cir. 2021). "Standing is a component of subject matter jurisdiction." *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018). "The jurisdictional issue of standing is a legal question for which review is de novo." *Id.* (citation omitted).

Moreover, a district court's rejection of a class-action settlement is reviewed for abuse of discretion. *See Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004).

## III. DISCUSSION

Before launching into the substantive analysis of the district court's summary judgment ruling, we take a moment to clarify our scope of review. We conclude that it is limited to part of Count I and all of Count II.

Regarding Count I, although Plaintiffs make a fulsome argument that AA and the PAAC breached their duty of prudence, they simply "allude[] to an argument" in their brief that these defendants additionally breached their duty of loyalty. *See Curry v. Strain*, 262 F. App'x 650, 652 (5th Cir. 2008) (per curiam). Accordingly, to the extent Plaintiffs seek review of that latter claim, they have forfeited the right to have the court consider it. *See id.* (citing *United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000)). Furthermore, Plaintiffs, by not briefing it, have also abandoned their claim that AA and the PAAC are liable as co-fiduciaries for FCU's purported breach of its own fiduciary duties. *See Davis v. City of Alvarado*, 835 F. App'x 714, 717 n.2 (5th Cir. 2020) (per curiam) (citing *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010)).

No. 20-10817

There are no disputes as to whether we should review Count II and so we will proceed to do so.

Finally, with respect to Count III, Plaintiffs argue for the first time on appeal that FCU, rather than AA and the PAAC, is liable for engaging in a prohibited transaction under § 1106(a)(1). In addition to the fact that the complaint asserted Count III against AA and the PAAC, not FCU, Plaintiffs' response to FCU's summary judgment motion does not in fact suggest that they intended to sue FCU under § 1106(a)(1) (Plaintiffs' protestations notwithstanding). And by not raising before the district court their argument that FCU is liable under § 1106(a)(1), that argument is forfeited. *See Salinas v. McDavid Houston-Niss, L.L.C.*, 831 F. App'x 692, 695 (5th Cir. 2020) (per curiam) (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007)). Further, because Plaintiffs do not dispute the district court's conclusion that they failed to respond to AA and PAAC's summary judgment motion arguing that Plaintiffs could not prevail on their Count III claim, they have abandoned this claim entirely. *See id.*

### A. Standing

To prove Article III standing, a plaintiff must show that he or she "h[as] (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing, inter alia, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "As *Lujan* emphasized, however, the standard used to establish these three elements is not constant but becomes gradually stricter as the parties proceed through 'the successive stages of the litigation.'" *In re Deepwater Horizon*, 739 F.3d 790, 799 (5th Cir. 2014) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 (1996)). The plaintiff can establish standing at the summary judgment stage only by "'set[ting] forth by affidavit or other evidence

No. 20-10817

specific facts, which[,] . . . taken [as] true,' . . . support each element" of the standing analysis. *Texas v. Rettig*, 987 F.3d 518, 527–28 (5th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561). A plaintiff must demonstrate standing for himself or herself, not just for others he or she professes to represent. *See Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013). Finally, "[t]he court must evaluate . . . Article III standing for each claim; 'standing is not dispensed in gross.'" *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015) (quoting *Lewis*, 518 U.S. at 358 n.6).

Defendants argue that Plaintiffs do not have constitutional standing for their claims. We agree.

### i. Count I

The district court determined that Plaintiffs lacked standing as to their live claim against AA and the PAAC. It first observed Plaintiffs' theory of liability to be "that they could have earned better returns had [AA and the PAAC] selected a stable value fund instead of the [FCU Option][.]"[8] The district court then reasoned that to realize those returns, Plaintiffs had to establish that they "would have chosen the stable value fund for their investments." Since Plaintiffs did not present any evidence showing that they would have made such a choice, the district court concluded that "their alleged injuries are at best speculative, not concrete."

While we also conclude that Plaintiffs do not have standing regarding Count I, we do so for a different reason. Plaintiffs' purported injury is income

---

[8] As the district court noted, although "Plaintiffs have from time to time mentioned that a stable value fund is one alternative capital preservation investment to the [FCU Option][,] [t]hey have never identified any other such alternative. Their complaint names only a stable value fund as the alternative that should have been offered. And, in fact, their expert on the subject, [James] King, opines that a stable value fund should have been offered instead of the [FCU Option]."

No. 20-10817

that they would have received had AA and the PAAC not offered the FCU Option. Their expert has provided calculations for the returns that they would have earned had they not invested in the FCU Option but had instead placed their money in a stable value fund. This "lost investment income" is a "concrete" and redressable injury for the purposes of standing. *See Spokeo*, 136 S. Ct. at 1547–48.[9] That said, another question we must ask is whether Plaintiffs would have in fact invested in a stable value fund to earn the higher returns had AA and the PAAC never offered the FCU Option. In other words, the question is whether Plaintiffs have demonstrated that it is "substantially probable that the challenged acts of the defendant, not of some . . . third party[]" (including themselves) caused the injury. *See Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citations omitted). If anything, the record reveals that Plaintiffs would not have invested in a stable value fund in a counterfactual world since they did not place their money in one when given the opportunity to do so. As AA and the PAAC observe, "Plaintiffs could have submitted a declaration, affidavit, or testimony to the effect that they would have invested in a stable value fund absent the [FCU Option]. But they offered no such evidence. That is the end of the matter."

Even so, Plaintiffs rely on several cases that in theory demonstrate that they have standing. All of these decisions, though, are inapposite since they

---

[9] AA and the PAAC's reliance on *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), to illustrate that Plaintiffs have not suffered a cognizable injury is inapt. The plaintiffs in *Thole* lacked a "concrete stake in the lawsuit" because as "participants in a defined-benefit plan," which guaranteed them a fixed payment each month no matter the plan's value or the results of the plan fiduciaries' investment decisions, they "possess[ed] no equitable or property interest in the plan." *Id.* at 1619–20. In explaining why the plaintiffs lacked standing, the Court explicitly drew a distinction between a defined-benefit plan and "a defined-contribution plan, such as a 401(k)," in which "the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." *Id.* at 1618. Thus, on its own terms, *Thole* cannot be extended to the case at bar.

No. 20-10817

speak to the appropriate measure of damages, not to whether the plaintiff has suffered an injury caused by the defendant in the first instance. In reality, all but two of them do not address the issue of standing at all. The first outlier, *Sweda v. University of Pennsylvania*, notes that a plaintiff does not lack standing to sue simply because a retirement plan offers a "mix and range of investment options." *See* 923 F.3d 320, 333–34 (3d Cir. 2019). But AA and the PAAC do not claim that Plaintiffs lack standing for this reason. The second, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, also addresses a standing issue not relevant to this action, namely whether all class members had to be injured for there to be standing. *See* 335 F.R.D. 1, 16 n.12 (E.D.N.Y. 2020).

In sum, the district court correctly concluded that Plaintiffs lacked standing as to Count I.

<u>ii. Count II</u>

In contrast to Plaintiffs' claims against AA and the PAAC, the district court determined that Plaintiffs had standing to sue FCU. It reasoned that Plaintiffs incurred a cognizable injury by receiving a lower interest rate in the FCU Option than they would have received had FCU not dealt with plan assets. Plaintiffs averred that FCU "used . . . plan assets to provide loans to [other] [FCU] members and to make other investments . . . for which it earned substantial income, which in turn permitted [FCU] to offer substantially higher interest rates on similar demand deposit accounts to other customers of [FCU] than it provided to Plan participants." Plaintiffs' expert adduced the amount that they would have earned under those higher rates. Once again, Plaintiffs have shown that they were injured and that the injury is redressable. But, once more, Plaintiffs have failed to satisfy the element of causation. As FCU asserts, "[T]here is no connection between any alleged losses to the plan, [sic] and the statutory claim against [FCU],

No. 20-10817

which is that [FCU] used plan assets for its own benefit." Put another way, Plaintiffs have not supplied any evidence demonstrating that investors in FCU funds other than the FCU Option received higher interest rates generated by investments of Plan assets.

Instead of offering new arguments in support of the district court's conclusion that they had standing as to their claim against FCU, Plaintiffs simply rely on their prior assertions. But, for the reasons discussed above, those contentions lack merit. Furthermore, Plaintiffs raise an entirely separate theory of liability as to FCU. Hence, even if their standing arguments were meritorious as to Plaintiffs' claim against AA and the PAAC, they would be inapplicable as to their claim against FCU.[10]

In short, the district court erred in concluding that Plaintiffs had standing with respect to their claim against FCU.

*     *     *

It is a "settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason." *NLRB v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 722 n.3 (2001) (citation and internal quotation marks omitted). Hence, we affirm the district court's dismissal of both Count I and Count II. Given we lack jurisdiction over those claims, we do not reach the parties' arguments as to the merits.

---

[10] In so far as Plaintiffs attempt to shoehorn their expert's conclusions as to the higher amount Plaintiffs should have received from FCU onto their arguments for standing to sue AA and the PAAC, that effort must fail for the same reason.

No. 20-10817

## B. Settlement

Plaintiffs additionally argue that the district court abused its discretion in denying preliminary approval of the settlement. We disagree and affirm the district court on this issue.

AA and the PAAC contend that the court should not even reach the merits of Plaintiffs' argument because the settlement agreement did not "provid[e] for further appellate review of" the district court's decision. Assuming Plaintiffs have not waived their right to appeal the settlement, we hold that Plaintiffs cannot now challenge the district court's assessment of the settlement itself. Plaintiffs' briefing did not argue that the district court somehow misapplied the governing legal standard. Instead, Plaintiffs suggest that the lower court abused its discretion by ultimately granting summary judgment in favor of Defendants after initially concluding during the settlement phase that Plaintiffs' claims would likely succeed. Consequently, Plaintiffs have forfeited any arguments as to the propriety of the settlement. *See United Paperworkers Int'l Union AFL-CIO, CLC v. Champion Int'l Corp.*, 908 F.2d 1252, 1255 (5th Cir. 1990).[11]

However, even assuming Plaintiffs had not forfeited the argument, the argument is meritless. Before approving a settlement, a court "must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) (citation

---

[11] To the extent Plaintiffs challenged the district court's rejection of the settlement's adequacy for the first time during oral argument, that does not save them from forfeiture. An argument raised for the first time at oral argument is forfeited. *See Vargas v. Lee*, 317 F.3d 498, 503 n.6 (5th Cir. 2003); *see also Ocwen Loan Servicing, L.L.C. v. Moss*, 628 F. App'x 327, 328 (5th Cir. 2016) (per curiam) (citing *United Paperworkers* and holding that an argument initially raised at oral argument is forfeited).

omitted). Yet Plaintiffs did not provide the district court with the needed assurance. Before entering the settlement, the parties engaged the services of a mediator, the Honorable Faith S. Hochberg (Retired). While Judge Hochberg proposed that the parties agree to a settlement of $8.8 million in cash, she conditioned her recommendation on "[c]onfirmatory discovery necessary to obtain court approval." The district court then provided Plaintiffs with multiple opportunities to gather and provide the court with information required to assess the adequacy of the settlement. In response, Plaintiffs provided two declarations from their counsel, John J. Nestico. Both declarations outlined the efforts counsel made to bolster Plaintiffs' claims. But neither of the declarations cited to evidence demonstrating that $8.8 million was sufficient. Determining that it had "received nothing" that would allay its concerns regarding the $46.2 to $79.2 million gap between the settlement amount and the claimed losses, the district court declined preliminary approval of the settlement. The district court did not abuse its discretion in doing so.[12]

With respect to the argument Plaintiffs actually raised on appeal regarding the district court's rejection of the settlement, we determine that it, too, is unavailing. As the district court had much less information about this case when it assessed the settlement than it did on summary judgment,

---

[12] That the settlement also secured between $30 and $48 million in structural relief for Plaintiffs does not change this analysis. The settlement required AA "to enlist the services of an independent investment consultant to engage in a competitive process for the determination of a stable value option for the Plan on a going forward basis." As Plaintiffs concede, this would have been "non-monetary" relief. Additionally, as Plaintiffs' counsel observed, the value of the structural relief was based on the amount Plaintiffs might earn in the future if they were to invest in a stable value fund rather than the FCU Option, not what they had lost in the past. For these reasons, the structural relief cannot be compared to the actual monetary losses that Plaintiffs purportedly suffered (and for which the $8.8 million was designed to compensate).

No. 20-10817

the lower court's divergent opinions as to the merits of Plaintiffs' claims are not inherently inconsistent. *See Bates v. Ford Motor Co.*, 174 F.3d 198, 1999 WL 153017, at *3 (5th Cir. 1999) (unpublished) (rejecting the plaintiffs' argument that "summary judgment was improper because the district court should have approved class certification and the proposed settlement"). For this reason, Plaintiffs' reliance upon *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095 (9th Cir. 2008), is misplaced. In *Pilkington*, the parties agreed to settle the case the day before the district court granted the defendants' motions for summary judgment. *Id.* at 1099. The Ninth Circuit held that the district court should have first evaluated the settlement under Rule 23(e) before rendering summary judgment because "the parties [had] bound themselves to a settlement agreement subject only to court approval." *Id.* at 1100–02. In the case at bar, the district court assessed and declined to approve the parties' settlement years before it granted summary judgment to Defendants. *Pilkington* therefore does not foreclose the district court's actions here, and Plaintiffs even concede that the holding in that case "may not be directly applicable" to this one.[13]

Put briefly, Plaintiffs have not demonstrated that the district court abused its discretion in denying approval of the settlement.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED in part, REVERSED in part, and VACATED in part. The

---

[13] Plaintiffs also rely upon *Cotton v. Hinton* in support of their argument that the district court abused its discretion, which observed that "[p]articularly in class action suits, there is an overriding public interest in favor of settlement." 559 F.2d 1326, 1331 (5th Cir. 1977). That case, however, is even less apposite than *Pilkington* because it did not deal with the relationship between a summary judgment ruling and a settlement agreement.

No. 20-10817

case is REMANDED with instructions to DISMISS Plaintiffs' claim against FCU, i.e., Count II, for lack of jurisdiction.